410 So.2d 217 (1982)
STATE of Louisiana
v.
Joseph L. WILLIAMS.
No. 81-KA-1410.
Supreme Court of Louisiana.
January 25, 1982.
Rehearing Denied March 19, 1982.
*218 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Robert W. Gillespie, Jr., Asst. Dist. Atty., for plaintiff-appellee.
Donald R. Minor and Jeanette G. Garrett of Indigent Defender Office, Shreveport, for defendant-appellant.
JONES, Justice Ad Hoc.[*]
Defendant Williams was indicted for the crime of second degree murder (La.R.S. 14:30.1), convicted by jury as charged, and sentenced to life imprisonment at hard labor without benefit of parole. Defendant appealed his conviction and sentence, relying on sixteen assignments of error, twelve of which were argued.
During the early morning hours of December 22, 1979, the defendant, a 27 year old black male, was eating breakfast with *219 several friends at Denny's Restaurant in Shreveport. Defendant began flirting with their waitress, Cindy Grove, a young white female. When she expressed displeasure with his attention, defendant started harassing and verbally abusing Miss Grove. In the meantime, Wesley Ford (a 21 year old white male), boyfriend of the waitress, entered the restaurant and overheard her complaining to another waitress about the defendant's behavior. Ford approached the table where defendant was sitting, asked that defendant refrain from bothering the waitress, and returned to his seat at the counter.
As defendant and his party finished their meal and walked to the cashier to pay their bill, defendant stopped where Ford was sitting, placed a hand on Ford and started discussing his difficulty with Miss Grove. Ford reacted by striking defendant on the head with a coffee cup. The two then began grappling and fell to the floor wrestling. Several onlookers, including restaurant employees and customers, immediately separated the two combatants.
Ford stood up, collected his personal belongings that had fallen on the floor, brushed himself off, and engaged in a conversation with Lynn West, an assistant manager of the restaurant. Defendant also regained his feet and walked to the first of the double doors leading out of the premises, as though to leave the restaurant. However, upon reaching the door defendant pulled a revolver, turned around, walked toward Ford and fired several shots at him. Three bullets struck Ford, fatally wounding him.

Assignment of Error No. 1
Defendant argues that the trial judge erred in denying his challenge for cause of seven prospective jurors, each of whom on voir dire examination expressed personal disapproval of interracial dating. He contends that because of this prejudicial attitude these prospective jurors could not have been impartial in this case involving a black defendant and a white victim, and should have been disqualified under La.C. Cr.P. Art. 797(2).
This court noted in State v. McZeal, 352 So.2d 592 (La.1977):
"A prospective juror's negative opinions on racial intermarriage and social preferences do not necessarily reflect on his ability to judge fairly and justly, free from prejudice. (citations omitted) Rather, the true test of a juror's qualification to serve is his ability to judge impartially based on the law and the evidence admitted at trial, as gleaned from the totality of his responses on voir dire examination."
The record in this case reflects that each of the challenged prospective jurors denied that his or her attitude toward interracial dating would in any way prevent him or her from serving as a fair and impartial juror. Considering their responses as a whole to the voir dire examination, we do not find that the trial judge erred in denying the challenges for cause.
Consequently, this assignment lacks merit.

Assignment of Error No. 6
Defendant claims that the trial judge erred in denying his motions for mistrial after the jurors observed defendant wearing handcuffs, thereby subverting his presumption of innocence.
It appears that defendant might have been observed in handcuffs by the jurors on three occasions: when brought into the courtroom with other prisoners on the morning of the trial; on the first day of the trial in the hall while being transported either to or from jail during the lunch break; and the next day, again during the lunch break, being transported to or from jail. On each of the latter two occasions defendant was either going to or coming from the jail elevator and was handcuffed for security purposes.
In State v. Wilkerson, 403 So.2d 652 (La. 1981), several jurors saw the defendant handcuffed after the trial had been adjourned for the day. Noting that the defendant was not handcuffed during the trial *220 but was handcuffed solely for the purpose of transport to and from the courtroom, this court held:
"Ordinarily, a defendant before the court should not be shackled or handcuffed or garbed in any manner destructive of the presumption of his innocence and of the dignity and impartiality of judicial proceedings. (citations omitted) However, exceptional circumstances may require, within the discretion of the trial court, the restraint of the prisoner for reasons of courtroom security or order or where the prisoner's past conduct reasonably justifies apprehension that he may attempt to escape. (citations omitted)
"If the handcuffing is objected to at the time of trial, for a finding of reversible error the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused." (p. 659)
Here, the defendant was initially brought into the courtroom with a group of prisoners and his handcuffs were immediately removed. On the other two occasions defendant was handcuffed solely for security reasons when being taken to and from jail. There was no evidence that any juror ever observed the defendant in handcuffs. Be that as it may, it is clear that the jurors were informed by defense counsel during the course of the trial that the defendant was in custody.
Under the circumstances, we do not find that defendant's right to a fair trial was prejudiced by the trial judge's ruling on these motions for mistrial.

Assignment of Error No. 7
During the presentation of the state's case one of its witnesses, Lynn West, Denny's assistant manager, stated that a waitress, 16 year old Ivy Ross, was struck in the arm by a bullet during the shooting incident. Defendant moved for a mistrial, arguing that the age of the waitress was irrelevant and that this testimony was elicited solely to inflame the jury. The trial judge's denial of the motion for mistrial forms the basis of this assignment.
In State v. Haarala, 398 So.2d 1093 (La. 1981) this court explained:
"The general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed. 1 Wigmore, Evidence, § 218 (3d Ed. 1940). In Louisiana, such acts are denominated as part of the res gestae and admitted under the authority of La.R.S. 15:447-48.....
"This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. (citations omitted) In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place."
In this case there was testimony that the defendant fired his revolver some five times, but that only three bullets struck Ford. Evidence that one of the bullets struck a bystander was clearly part of the res gestae and admissible although tending to prove another criminal act. Testimony concerning the age of the wounded waitress was merely incidental to her identification and was nonprejudicial.
This assignment is without merit.

Assignments of Error Nos. 8 & 9
These assignments relate to asserted errors on the part of the trial judge in admitting into evidence photographs of the victim lying on the floor at Denny's Restaurant (state exhibits 7, 9, 11 & 12) and autopsy pictures (state exhibits 15-22).
Defendant contends that the pictures of Ford on the restaurant floor were not accurate depictions of the location of the victim's body immediately after the *221 shootingapparently arguing that someone moved the body.
It is axiomatic that a trial judge's determination regarding the relevancy of evidence will not be disturbed in the absence of a clear abuse of discretion. The photographs in question depicted for the jury the general layout of the crime scene, the identity of the victim and the area where he died. The trial judge did not abuse his discretion in ruling them admissible.
Defendant asserts that the autopsy pictures should not have been admitted into evidence because of their gruesome nature.
The test of admissibility of allegedly gruesome photographs is whether their probative value outweighs the potential prejudicial effect on the jury. State v. Hartman, 388 So.2d 688 (La.1980). These autopsy pictures showed the location, number and nature of the wounds sustained by the victim. They were not unduly gruesome. Their probative value clearly outweighed any prejudicial effect they might have had upon the jury.
These assignments lack merit.

Assignment of Error No. 10
Defendant complains that the trial judge erred in prohibiting him from questioning state witnesses West and Grove about the victim's reputation. The state previously advised defense counsel that the victim had been convicted for carrying a concealed weapon (gun and brass knuckles) and was placed on probation.
Evidence of the dangerous character of a victim is admissible only if the accused first produces evidence that the victim made a hostile demonstration or overt act against the accused at the time of the incident. La.R.S. 14:482; State v. Lee, 331 So.2d 455 (La.1975).
As the term is here used, an overt act is a hostile demonstration of such character as to create in the mind of a reasonable person the belief that he is in immediate danger of losing his life or of suffering great bodily harm. State v. Brown, 172 La. 121, 133 So. 383 (1931).
We do not construe the victim's striking the defendant on the head with a coffee cup to be such an overt act, since it should not have placed a reasonable person in fear of either losing his life or suffering great bodily harm. This is confirmed by defendant's action in first walking away from the fight scene. Consequently, the requisite foundation for introduction of evidence of the victim's reputation was lacking.
Even if the victim's conduct amounted to an overt act under La.R.S. 15:482, the defendant did not lay a proper foundation for admissibility of the reputation evidence. As pointed out in State v. Lee, 331 So.2d 455 (1975):
"But, once the overt act is established, this type of evidence is admissible in support of a plea of self-defense in a murder prosecution for two distinct purposes: (1) to show defendant's reasonable apprehension of danger which would justify his conduct; and (2) to help determine who was the aggressor in the conflict."
In this case it was never asserted in any fashion that the defendant acted in self-defense. To the contrary, in his opening statement to the jury defense counsel remarked:
"I believe the principal issue you will have to decide is the reason for the shooting, whether or not the state in its proof of the killing satisfies you in relation to that area whether or not there was provocation to deprive a person as the law states of the self-control and cool reflection."
Defendant himself took the stand and conceded that he had never seen the victim before the restaurant encounter, never observed any kind of weapon on the victim and that the victim "didn't do nothing to upset me." Seeking to explain his shooting of the victim, the defendant asserted that when he reached the door on his way out he *222 "changed all over" and was "controlled by something."
Defendant argues that evidence of the victim's reputation should have been admitted as tending to prove that there was sufficient provocation to reduce the offense from second degree murder to manslaughter. Since the defendant admittedly did not know the victim, evidence of the victim's reputation would not be admissible to show the defendant's reasonable apprehension of danger. On the other hand, if the defendant is using this language to assert that the victim was the aggressor in the incident there might be some validity to his argument. However, in that case evidence is admissible only of general reputation and not of specific acts or the personal opinion of the witness. La.R.S. 15:479. Here, defense counsel did not lay a proper predicate by first establishing that the witnesses were community members with a general knowledge of the victim.
Be that as it may, in the final analysis defendant's own testimony belies any contention that the victim was the aggressor in the dispute.
This assignment is without merit.

Assignment of Error No. 11
Defendant had three previous criminal convictionsfor aggravated assault in 1970 and 1972 and for carrying a concealed weapon in 1974. The trial judge granted a defense motion to suppress the first two convictions for purposes of impeaching defendant's testimony since he was not represented by counsel. The trial judge ruled, however, that the state could use those convictions in cross-examining defendant's character witnesses, but cautioned that the state would have to strictly adhere to the pertinent guidelines delineated in State v. Johnson, 389 So.2d 372 (La.1980). Defendant objected to this ruling and elected not to call defendant's employer as a character witness. The court's ruling is the basis for this exception.
This court has held that the use for impeachment purposes of prior convictions which are void for failure to afford defendant his right to counsel deprives a criminal defendant of due process of law where the use of such prior convictions might well have influenced the outcome of the case. State v. Bernard, 326 So.2d 332 (La.1976). In this case, however, there was no attempt by the state to use prior uncounseled convictions for impeachment purposes or any ruling by the trial judge that this would be permissible. Conversely, the trial judge properly held that these convictions might be used in questioning character witnesses provided the Johnson guidelines were followed by the state. Since it is well established that a character witness may be questioned about arrests, it seems to logically follow that he may be interrogated relative to convictions even though uncounseled.
This assignment lacks merit.

Assignment of Error No. 12
During the state's cross-examination of defense witness Charlotte McCall the following colloquy occurred:
"Q. Where had you been that night before you got to Denny's Restaurant?
A. To Shady Oaks
MR. MINOR: Your Honor, I object to the relevancy of that.
MR. GILLESPIE: Your Honor, this witness has testified as she has. I think the State
THE COURT: Excuse me. I haven't made my ruling. Do you suggest it will be relevant?
MR. GILLESPIE: I suggest it will be as to whether or not she may be under the influence of any drugs or narcotics
THE COURT: The witness is under cross-examination. The Court will allow you to pursue your questioning.
MR. MINOR: Your Honor, I would ask that the jury be removed."
*223 Defendant objected to the prosecutor's comment concerning drugs or narcotics, contending that a mistrial should have been granted.
Questions concerning the consumption of substances that might impair the ability of a witness to accurately see, hear or perceive are within the proper scope of cross-examination. However, even if this comment was improper, any possible prejudice was cured by the trial judge's admonition to the jury. This court will not overturn convictions because of prejudicial comments unless it is convinced the remarks influenced the jury and contributed to a verdict adverse to the defendant. State v. Lee, 340 So.2d 180 (La. 1976).
There is no merit to this assignment.

Assignments of Error Nos. 13, 14 & 15
Defendant contends that the trial judge erred in refusing to give special requested jury charges.[1]
In his general charge the trial judge defined both second degree murder and manslaughter and delineated the distinction between the two. He further cautioned the jury against letting sympathy for the victim influence its verdict, emphasizing the importance of basing its verdict solely on the evidence presented to it and the law explained by the court.
We find that the requested special jury charges were adequately covered by the general jury charge. La.C.Cr.P. Art. 807.
This assignment is without merit.

Assignment of Error No. 16
Defendant argues that the trial judge erred in denying him a new trial, claiming that even in viewing the evidence in the light most favorable to the prosecution the proper verdict should have been "guilty of manslaughter."[2]
As previously pointed out, defendant's own testimony contradicted any contention that he killed the victim in sudden passion or heat of blood after having been provoked by conduct of the victim. Defendant's only excuse for the killing was that he was under "outside control."
Our review of the record convinces us that there was sufficient evidence from which a rational trier-of-fact could conclude beyond a reasonable doubt that the defendant committed second degree murder of Wesley Ford. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
This assignment is without merit.
Decree
For the reasons set forth, defendant's conviction and sentence are affirmed.
NOTES
[*] Judges O. E. Price of the Court of Appeal, Second Circuit, John C. Boutall, Court of Appeal, Fourth Circuit, and Fred W. Jones, Jr., Court of Appeal, Second Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Justices Pascal F. Calogero, Jr., Walter F. Marcus, Jr., James L. Dennis and Jack C. Watson.
[1] (1) In order to find the defendant guilty of Second Degree Murder the State must prove beyond a reasonable doubt that there was not provocation sufficient to deprive the defendant or an average person of his self-control and cool reflection.

(2) In order to find the defendant guilty of Manslaughter it is not necessary to find that an average person would have responded to the provocation in the same manner as did the defendant, but only that an average person subjected to the same provocation would have been deprived of his self-control and cool reflection.
(3) You are not to be influenced by sympathy, passion, prejudice, or public opinion. You are expected to reach a just verdict.
[2] Manslaughter is:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or (La.R.S. 14:31)