553 So.2d 865 (1989)
STATE of Louisiana
v.
Herman JOHNSON, Jr.
No. 88 KA 1686.
Court of Appeal of Louisiana, First Circuit.
November 14, 1989.
*866 Mark Rhodes, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of La.
Stuart Dorman, Indigent Defender Bd., Houma, for defendant and appellantHerman Johnson.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
Herman Johnson, Jr. was indicted by the Terrebonne Parish grand jury for second degree murder, a violation of LSA-R.S. 14:30.1. He was tried by a jury, which convicted him as charged. The trial court imposed the mandatory term of life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. Defendant appealed, urging ten assignments of error.
Defendant was charged with the murder of Mary Louise Theriot, one of the owners of the Cococabana Lounge in Grey, Louisiana. The murder occurred on the premises of the lounge. The victim was shot as she walked toward defendant from the kitchen area. She had been cooking in the kitchen, and she carried a kitchen knife in her hand. Defendant contended that he shot her in self-defense. The state presented evidence that defendant had performed mechanical work for the victim and Ernest Antoine, joint owners of the bar, for which he apparently had not been paid and that defendant went to the bar, armed, in order to collect the money. The state also presented evidence that the victim was not carrying the *867 knife in a menacing manner at the time defendant shot her and that she did not threaten him.

DENIAL OF MOTION TO SUPPRESS
By assignment of error number one, defendant submits that the trial court erred by denying his motion to suppress a statement he gave to investigating officers after his arrest. He claims that he was in substantial pain at the time he gave the statement because of an injury he sustained during the incident, and therefore, the state did not prove that he was not under duress at the time he gave the statement.
Before a confession or inculpatory statement can be introduced into evidence, it must be affirmatively shown that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. LSA-R.S. 15:451. The state has the burden of proving the voluntariness of a confession or inculpatory statement beyond a reasonable doubt. State v. Robinson, 525 So.2d 712 (La.App. 1st Cir.1988).
After his arrest, defendant was treated by Dr. Donald Thibodeaux for a scalp wound. Dr. Thibodeaux testified that defendant had a laceration of approximately one centimeter (slightly less than one-half of one inch) which required one or two sutures. Dr. Thibodeaux also advised defendant to take regular Tylenol for pain relief. According to the doctor's report, defendant was well-oriented and alert at the time of the examination, and his blood pressure, pulse, and temperature were normal.
Despite defendant's contention that the voluntariness of his statement was vitiated by the wounds he sustained, there is no medical evidence presented that the nature of the injuries was of such severity as to exclude the statement as voluntary. See State v. Smith, 407 So.2d 652 (La.1981). For the lack of positive evidence in favor of defendant, his reasons herein are without factual basis and, therefore, without merit.

DENIAL OF APPOINTED PATHOLOGIST
By assignment of error number two, defendant submits that the trial court erred by denying his motion for the appointment of a pathologist to conduct an investigation on his behalf. Defendant sought to obtain information concerning the pattern of gunshot wounds, the length of survival and physical activity of the victim after the gunshot wound, the drug and chemical levels of the victim, and the identification of blood stains on the victim, the defendant, and in the area of the shooting. He claims that, under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), he was entitled to the appointment of an expert to assist him on issues likely to be significant factors in his defense.
In Ake v. Oklahoma, supra, the defendant was charged with first degree murder and his sole defense was insanity. The United States Supreme Court concluded that the defendant was entitled to an independent psychiatric examination. However, the Court first set forth several factors relevant to the question of whether or not the defendant's sanity was likely to be a significant factor, requiring, as a minimum, a prima facie showing that the defendant's sanity was a crucial factor in his defense and that the trial court was on notice of that fact when the request for a court-appointed psychiatrist was made.
In the factual allegations supporting his request for the appointment of an expert pathologist, defendant claimed only that he was charged with second degree murder and that he intended to raise the issue of justifiable homicide. The trial court filed a written ruling denying defendant's motion. Therein, the court noted as follows:
A review of the Motion does not set forth sufficient factors or reasons for this Court to appoint the requested expert. Defense counsel has had an opportunity through appropriate discovery pleadings to obtain the information he desires, and without a showing that the defendant will be prejudiced in this trial or prevented from raising a defense, the Court sees *868 no justification to grant the order as submitted hereinabove.
Thus, the court clearly advised defendant that the motion did not set forth factual allegations supporting his claim that he was entitled to an investigator. Indeed, in his motion, defendant failed even to allege that an expert was necessary for his defense. Despite the court ruling that the factual allegations were insufficient, defendant elected not to re-file his motion and adequately support it. Therefore, defendant failed to establish a prima facie showing of the necessity of the investigator. See also State v. Clark, 387 So.2d 1124 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 900, 66 L.Ed.2d 830 (1981). This assignment of error has no merit.

ADMISSION OF PHOTOGRAPH
In assignment of error number three, defendant submits that the trial court erred in permitting the state to introduce a photograph of the crime scene. He claims that the photograph was objectionable because it showed a picture of a blanket, and the jury would naturally infer that a body was either underneath or near the blanket. A small trail of reddish dots, presumably the victim's blood, is visible in the photograph. However, the photograph does not show the body of the victim and was not gruesome in any way.
In questions of relevancy, much discretion is vested in the trial judge. Such rulings will not be disturbed on appeal in the absence of a showing of abuse of such discretion. State v. Washington, 484 So.2d 946 (La.App. 1st Cir. 1986).
We find no manner in which defendant could have been prejudiced by the introduction of the photograph in question. The same blanket is visible in other photographs to which defendant did not object. After defense counsel advised the court of the basis of his objection to the photograph, the state presented evidence to the jury that the blanket did not cover the victim's body. Accordingly, we find no abuse of discretion.

ADMISSION OF POLICE OFFICER'S STATEMENT
In assignment of error number four, defendant submits that the court erred by permitting the state to introduce evidence of an inculpatory statement of which he had not received notice. During trial, Warren LaCoste, one of the investigating deputies, testified that defendant admitted that he had shot the victim and told him "if he could he'd do it again."
In a bench discussion after Deputy La-Coste's testimony, the state advised the court that it was unaware that the deputy would relate the statement at issue herein. The state had provided defendant with pretrial notice of its intention to use defendant's statement to Ernest Antoine that "I should have shot you too." We are unable to determine from the record before us if the state was unaware of the statement made to Deputy LaCoste or if the state was aware of the statement but had elected before the trial to introduce only defendant's statement to Ernest Antoine.
Although defendant contends that the statement was inadmissible because he had not received notice that the state intended to introduce it, the notice provisions of LSA-C.Cr.P. art. 716(B) and (C) are applicable only when the state intends to introduce the defendant's statement at trial. The state's remarks to the court that it was unaware the deputy would testify to that statement reveals that the state did not intentionally solicit the statement and, accordingly, was not required to provide notice of the statement or its contents. See State v. Parker, 416 So.2d 545 (La. 1982).
Moreover, failure to make full disclosure pursuant to LSA-C.Cr.P. art. 716 is not necessarily fatal. In State v. Jackson, 450 So.2d 621 (La.1984), the court noted that:
The purpose of giving defendant sufficient notice of each inculpatory statement the state intends to use is to permit defendant a fair opportunity to meet the issue. If a defendant is misled by the state responses relative to its possession of an oral inculpatory statement and is lulled into a misapprehension of the *869 strength of the state's case and suffers prejudice when the statement is subsequently introduced at trial, basic unfairness results which constitutes reversible error. [450 So.2d at 630]
However, the court has the discretion to consider the facts presented and to decide which course the interest of justice requires. State v. Clark, 446 So.2d 293 (La. 1984).
Herein, even if defendant were surprised by Officer LaCoste's testimony, he had received pretrial notice of the state's possession of and intent to use a contemporaneous statement in which he essentially admitted that he shot the victim. Accordingly, we find no manner in which the defendant might have been prejudiced by the introduction of the statement by Officer LaCoste. This assignment of error has no merit.

EXCLUSION OF BLOOD TEST RESULTS
In assignment of error number five, defendant submits that the trial court erred by ruling that he could not introduce the results of blood-alcohol tests performed on the victim in conjunction with the autopsy. He contends that the results of the tests, which revealed that the victim's blood-alcohol content was .13, were relevant to show that the victim might have been more likely to advance upon him in her intoxicated state, thus buttressing his claim of self-defense.
Prior to trial, the state filed a motion in limine to determine the admissibility of the blood-test results. The state argued that the findings were not admissible under State v. Rowell, 517 So.2d 799 (La.1988), in which the Louisiana Supreme Court found the provisions regulating blood-alcohol tests were inadequate. The trial court agreed that the test results were not reliable and prohibited defendant from introducing them.
In Rowell, the Louisiana Supreme Court held that the state failed to meet its burden of proving that the regulations promulgated by the Department of Public Safety insured the integrity and reliability of blood-alcohol analyses because they did not contain provisions for repair, maintenance, inspection, cleaning, certification, and chemical accuracy. The court concluded, therefore, that the results of a gas chromatography test were improperly admitted in defendant's trial for driving while intoxicated and remanded for a retrial at which the test results could not be admitted.
We do not find that the concerns addressed by the court in Rowell are pertinent herein. Initially, we note that it was the defendant's blood-alcohol test results which the state sought to introduce therein. In the instant proceeding, the victim's test results were at issue. Moreover, Rowell was prosecuted for second-offense driving while intoxicated. The court specifically noted that the defendant was charged with operating a motor vehicle with a blood-alcohol concentration of .10% or more, therefore legally intoxicated, as provided in LSA-R.S. 32:662. Thus, his guilt or innocence was directly tied to the test results. However, LSA-R.S. 32:662 deals with legal intoxication with regard to the operation of motor vehicles. See State v. Lowdins, 412 So.2d 1349 (La. 1982). Moreover, the court was concerned in Rowell, as well as in prior decisions of the court considering the validity of breath-alcohol tests, with the importance of establishing safeguards to guarantee the accuracy of chemical tests used in criminal prosecutions because of the constitutional ramifications arising from the use of the presumption of intoxication whenever the accused's blood-alcohol level is .10% or greater. As the early breath-alcohol test cases emphasize, the court was intensely concerned with the protection of the right of the accused to be presumed innocent, which requires the state to prove beyond a reasonable doubt every fact necessary to constitute the crime charged and forbids the state to shift the burden of ultimate persuasion of an essential element of the crime charged to the defendant. See State v. Graham, 360 So.2d 853 (La.1978).
Defendant sought to introduce the blood-alcohol test results to establish that the victim had been drinking. The accuracy of the test results were not as critical as in *870 those cases wherein the state actually seeks to prove the legal intoxication of someone criminally accused. The possibility that the results of the tests might have been questioned because of handling procedures related to the weight rather than the admissibility of the evidence. See State v. Washington, 430 So.2d 641 (La.1983). Defendant did not seek to prove that the victim was legally intoxicated, nor was that fact at issue.
Thus, we conclude that the trial court erred in finding that State v. Rowell, supra, mandated the exclusion of the victim's blood-alcohol test results. However, although defendant contends that the exclusion of the results was reversible error, we find that the court's ruling was harmless error.
Both the Sixth Amendment of the United States Constitution and Louisiana Constitution, Art. 1, Section 16, provide that a criminal defendant has the right to present a defense. All relevant evidence necessary to that defense must be presented for a full adjudication. State v. Vigee, 518 So.2d 501 (La.1988). "Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible." LSA-R.S. 15:441.
The test for deciding whether or not there is reversible error when the trial court erroneously refuses to admit defense evidence is not whether the evidence "would probably have changed the verdict," rather, the appellate court must be convinced that the excluded evidence would not have affected the jury's determination. State v. Vaughn, 431 So.2d 358 (La.1982). In light of the other evidence presented at trial, we find that the exclusion of evidence of the victim's blood-alcohol level at the time of her death would not have affected the jury verdict.
Initially, we note that, although defendant claimed the results were necessary to show that the victim might have been more likely to attack him in her inebriated state, several state witnesses specifically testified that the victim had not threatened defendant in any way at the time he shot her. Moreover, evidence that the victim had been drinking earlier that day was presented to the jury through the testimony of Ernest Antoine, who related that he and the victim usually opened the bar around 9:00 or 10:00 a.m. and that she had had a "few" drinks by the time the incident occurred.
We conclude, therefore, that defendant was not deprived of the substance of his defense at trial because the circumstances were presented to the jury, and, therefore, the excluded evidence was not critical to his defense. Compare State v. Vaughn, supra. Accordingly, we find the error was harmless.

EXCLUSION OF EVIDENCE OF VICTIM'S REPUTATION
In assignment of error number six, defendant submits that the trial court erred by refusing to permit him to introduce evidence of specific acts to show the victim's violent character. Defendant sought to introduce evidence including the fact that the victim had shot (and possibly killed) a former employee of the lounge in order to establish that she was capable of initiating violent action of the type necessary to justify the use of self-defense. The trial court permitted defendant to present evidence of the victim's general reputation for violence. However, the court refused to permit defendant to present evidence of specific prior acts of violence because defendant did not establish that he was aware of these incidents at the time he shot her. Defendant claims the court's ruling abridged his right to remain silent by forcing him to choose whether to take the stand to present the foundation (thus according the state the opportunity to cross-examine him on the entire case) or to remain silent and forego the opportunity to present highly relevant information to the jury.
LSA-R.S. 15:482 provides for the introduction of evidence of the character of the victim of an offense in certain limited situations. "In the absence of evidence of hostile *871 demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against [the] accused is not admissible." LSA-R.S. 15:482. This rule has been interpreted as requiring a foundation that the victim made a hostile demonstration or an overt act against the accused at the time of the incident of such character as to create in the mind of a reasonable person the belief that he is in immediate danger of losing his life or suffering great bodily harm. State v. Williams, 410 So.2d 217 (La.1982); State v. Burton, 464 So.2d 421 (La.App. 1st Cir.1985), writ denied, 468 So.2d 570 (La.1985).
Once an overt act is established, evidence of the dangerous character of the victim is admissible in support of a plea of self-defense in a murder prosecution for two distinct purposes: (1) to show the defendant's reasonable apprehension of danger which would justify his conduct; and (2) to help determine who is the aggressor in the conflict. When the evidence is sought to be introduced to show the accused's state of mind, it must be shown that the defendant knew of the victim's prior threats or reputation. State v. Lee, 331 So.2d 455 (La.1975). After it is shown that the defendant had such knowledge, the scope of evidence allowed to indicate the victim's character is not limited to evidence of general reputation, but includes evidence of specific threats or acts of violence. See State v. Edwards, 420 So.2d 663 (La.1982). Conversely, when evidence of the victim's dangerous character is sought to be introduced by a defendant to prove that the victim was the aggressor, there is no requirement that the defendant have knowledge of the victim's prior acts or reputation; however, only evidence of general reputation, not evidence of specific acts or personal opinion, is admissible to establish who was the aggressor. State v. Edwards, supra.
Defendant presented the testimony of Walter Robinson, who testified that he was in the bar at the time of the shooting. Mr. Robinson related that he saw the victim walk toward the defendant with a knife in her hand as the defendant was trying to leave the lounge, and the victim told defendant, "I'll put this knife on you."
Thereafter, defendant attempted to question another witness about her knowledge of the victim's reputation. The state objected, arguing that defendant had not presented evidence of an overt act. During a lengthy bench conference, the court ruled that defendant had presented evidence of an overt act and would be permitted to introduce evidence of the victim's general reputation. At that time, defendant specifically disclaimed any intent to produce evidence of specific acts of violence. Subsequently, defense counsel advised the court that defendant knew that the victim had shot a man for no apparent reason and that he could present ten witnesses to say that the incident was common knowledge in the community. However, he could not call a witness who could specifically testify that he or she told defendant about the incident, thereby establishing defendant's knowledge of it. The court ruled that, absent such foundation, evidence of that specific act would not be admissible. Defendant objected to that ruling.
The rule that the defendant must establish prior knowledge of the victim's reputation is long standing, both in the jurisprudence of this state and in the common law. See e.g. Smith v. United States, 161 U.S. 85, 16 S.Ct. 483, 40 L.Ed. 626 (1896); State v. Nash, 45 La.Ann. 1137, 13 So. 732 (1893), reversed on other grounds, 13 So. 734 (La. 1893). However, although courts have uniformly held that, in a homicide case, evidence of specific acts to prove the character of the victim is admissible if the accused can establish knowledge of those acts, we have not found the instant problem addressed, that is, how that foundation can be established if the defendant does not elect to testify and no other witnesses are available who can attest to his knowledge. Several cases reversing the accused's conviction upon the improper exclusion of relevant testimony clearly recognize that evidence of this nature can be crucial to the defense. See State v. Edwards, supra; State v. Jackson, 419 So.2d 425 (La.1981); State v. King, 347 So.2d 1108 *872 (La. 1977); State v. Lee, supra. See also State v. Sam, 412 So.2d 1082 (La.1982). In those cases, the foundation that defendant was aware of the acts was established through the testimony of the defendant or his witnesses. Herein, no evidence was presented that defendant was aware of the incident, and, according to his attorney, only the accused could present that foundation.
Although we recognize the dilemma with which defendant was presented, we can not say the trial court erred by refusing to permit defendant to present the testimony as to specific acts without meeting the foundation requirement. Initially, we note that defendant did not ask the trial court to permit him to give limited testimony to establish the foundation, such as the opportunity accorded a defendant claiming a confession or statement is involuntary. Moreover, at the time the court sustained the state's objection, defendant specifically advised the court that he sought to introduce only general reputation testimony and was not attempting to present evidence of specific acts. Thus, the argument presented herein relating to the abrogation of defendant's privilege against self-incrimination was never presented to the trial court and, therefore, is not susceptible to review by this court at this time. See Uniform RulesCourts of Appeal, Rule 1-3.
Accordingly, we find no merit to defendant's assignment of error. If defendant seeks to prove his allegation that his privilege against self-incrimination was abridged, his proper remedy is by post-conviction relief, presenting the trial court with the opportunity to address this issue. See LSA-C.Cr.P. arts. 924, 930.3.

SUFFICIENCY OF THE EVIDENCE
By assignments of error seven, eight, and nine, defendant contests the sufficiency of the evidence. In assignment of error number seven, defendant submits the verdict is contrary to the law and the evidence. In assignment of error number eight, defendant contends the trial court erred by denying his motion for a post-verdict judgment of acquittal. In assignment of error number nine, defendant argues that the trial court erred by denying his motion for a new trial.
Defendant claims the state failed to prove that the homicide was not committed in self-defense. He contends that the eyewitness testimony presented by the state should have been discounted by a reasonable jury because each of the witnesses was biased to some degree and that he presented the testimony of an uninterested party that the victim threatened him with a knife before he shot her.
When a defendant claims self-defense in a homicide case, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Garcia, 483 So.2d 953 (La.1986). However, "[a] person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." LSA-R.S. 14:21. A homicide is justifiable only "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger...." LSA-R.S. 14:20(1).
The evidence presented by the state establishes that: (1) defendant went into the bar armed, seeking payment for mechanical services rendered on behalf of the owners of the bar; (2) defendant was intoxicated and belligerent; and, (3) the victim, although clutching a kitchen knife, made no aggressive moves toward defendant.
For appellate purposes, the standard of review of a claim of self-defense is whether or not a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Matthews, 464 So.2d 298 (La. 1985). This Court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. State v. Matthews, 450 So.2d 644 (La. 1984). Viewing *873 the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt that this homicide was not committed in self-defense. Accordingly, these assignments of error have no merit.

EXCESSIVE SENTENCE
By assignment of error number ten, defendant submits that the trial court imposed an excessive sentence. He contends the sentence is excessive in light of his position as a working member of the community and the fact that the offense was committed in self-defense.
Defendant was convicted of second degree murder. The penalty for second degree murder is life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:30.1.
Louisiana courts have consistently held that a mandatory sentence of life imprisonment for second degree murder does not constitute cruel and unusual punishment. State v. Graham, 422 So.2d 123 (La.1982), appeal dismissed, 461 U.S. 950, 103 S.Ct. 2419, 77 L.Ed.2d 1309 (1983); State v. McGary, 479 So.2d 620 (La.App. 1st Cir. 1985). Although defendant claims that the sentence is excessive because he should have been acquitted (or possibly convicted of manslaughter), a trial court is not required to reweigh the sufficiency of the evidence as a sentencing factor. See State v. Harris, 518 So.2d 590 (La.App. 1st Cir. 1987), writ denied, 521 So.2d 1184 (La. 1988). Herein, defendant relies only upon his claim that the evidence supported a lesser verdict and, therefore, the sentence is excessive. He does not allege any valid basis upon which his mandatory sentence is excessive in proportion to other sentences imposed for second degree murder. See Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). See also State v. Foley, 456 So.2d 979 (La.1984). Hence, the trial court did not err in imposing sentence.

CONCLUSION
For the above reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.