580 So.2d 1064 (1991)
STATE of Louisiana
v.
Eutico TORRES.
No. 90-KA-1291.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant-appellant Eutico Torres.
Before KLEES, LOBRANO, WARD, JJ.
KLEES, Judge.
On April 8, 1982, the defendant was indicted by a grand jury of second degree murder, a violation of R.S. 14:30.1. He was tried before a jury on July 27, 1982 and found guilty of manslaughter and was subsequently sentenced to twenty-one years at hard labor with credit for time served. This appeal followed.

FACTS
On March 16, 1982 outside an apartment building located at 2314 St. Anthony Street, the defendant Eutico Torres shot the victim, Carmelo Cobas three times with a .22 revolver and killed him.
Oscar Fallia, who lived next door to the defendant and witnessed the shooting, testified for the State. Fallia testified that on the day of the shooting, the victim, Cobas, *1065 spent the day at Fallia's house. Susan Smith who was also known as Lydia and/or Mimi, an acquaintance of theirs, came over. Mimi subsequently walked outside and got into an argument with Luis Alorado who was also known as Rosita. Rosita/Luis is a man who dresses like a woman and who lived with the defendant.
Because of the argument between Mimi and Rosita/Luis, Eutico Torres went to Fallia's house to talk to Mimi. Carmelo Cobas asked what was going on. Torres and Cobas began arguing about whatever it was that had transpired between Mimi and Rosita/Luis. Torres went back to his own house and got his revolver. He then returned to Fallia's house. When he opened the door, Cobas said, "If you're going to kill, kill." Cobas, who was allegedly unarmed, according to Fallia, then crouched down and approached the defendant to take the gun away from him. The defendant fired his gun at Cobas several times, killing him. After the defendant shot Cobas he got a knife from his own house and placed it on Cobas. He then told a neighbor, Ms. Ledet, to call the police and to tell them that Cobas had tried to kill him with a knife.
The defendant testified on his own behalf. He said that, on the day of the shooting, he and Rosita/Luis had plans to go to his friend Nicholas' house. He wanted to return a gun to Nicholas. He was sitting outside his apartment with the gun in his pocket waiting for Rosita/Luis to get ready to go to Nicholas' house, when Mimi left Fallia's house, where she had been drinking with Fallia and Cobas, and came over to his house to see if she could borrow some money from him. Mimi and Rosita/Luis began to argue. The defendant told Mimi to go back to Fallia's house. She did.
The defendant followed her. As he stood in the doorway, he saw Mimi pick up a knife and begin to come back outside. As she passed Cobas, Cobas took the knife away from her. The defendant told Cobas not to interfere. Cobas said, "It is my problem." Cobas then began coming toward the defendant with the knife. The defendant backed up until he had backed himself into a fence. Cobas continued to approach. Believing that he was cornered and that Cobas was about to kill him, he fired at Cobas.
Rosita/Luis Alorado also testified for the defense to corroborate the defendant's story. He stated that he had met the defendant when both of them were living in Cuba and had lived with the defendant in New Orleans for eight months. He testified that he heard gunshots and went outside to see what was happening. He saw Cobas with a knife in his hand fall to the ground. He then heard Fallia instruct Mimi to get the knife and hide it under the fence so that police would not see it. Thus, Mimi allegedly hid the victim's knife.

ERRORS PATENT
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR
The defense contends that the trial court erred in allowing the State to elicit testimony from Officer Casanova, called by the State as a rebuttal witness, that defense witness, Rosita/Luis Alorado, had been "in and out of jail." The defense contended that this comment constituted an impermissible reference to another crime committed by Rosita/Luis and was prejudicial to the defendant.
Officer Casanova had previously testified during the State's case-in-chief regarding his unsuccessful efforts to locate two witnesses to the shooting, Susan Smith a/k/a Lydia a/k/a Mimi and Roberta Ledet. On rebuttal, he was questioned regarding his attempts to locate Rosita/Luis Alvorado who had testified for the defense. Officer Casanova testified:

REBUTTLE EXAMINATION
BY MR. DUBELIER:
Q. Officer, in regard to your investigations with this case did you have the occasion to do any investigation to an individual by the name of Luis Alorado, who goes by the name, Rosita?
*1066 A. Yes, I did. This was one of the witnesses. We had problems with all of the witnesses, naturally. This one was in and out of jail and had also moved from the apartment, or the fourplex.
Once he made the "in and out of jail" comment, the defense moved for a mistrial which the trial court denied. The State then continued its questioning of Officer Casanova:

FURTHER EXAMINATION BY MR. DUBELIER:
Q. Officer, did you have occasion to locate Luis Alvorado?
A. Yes, I had lost track of him, but I was able to find out where he was located.
Q. All right. Didn't you, in fact, locate him this morning at approximately eleven o'clock a.m.?
A. Somewhere thereabouts.
Q. Did you relay that information to the defense counselor that you had located their witness?
A. Yes.
BY MR. DUBELIER:
No other questions.
C.Cr.P. art. 770(2) mandates a mistrial when the judge, district attorney or a court official during trial or in argument refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Payne, 482 So.2d 178 (La.App. 4th Cir.1986), writ den. 487 So.2d 436. A state witness, such as a police officer, is not a "court official" under C.Cr.P. art. 770. State v. Perry, 420 So.2d 139 (La.1982); State v. Payne, supra. Thus C.Cr.P. art. 770 is not applicable under the argument that the police officer was a "court official."
Instead, C.Cr.P. art. 771, applies. Perry, supra; State v. Hutto, 349 So.2d 318 (La.1977).
C.Cr.P. art. 771 provides:
Art. 771. Admonition
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Under C.Cr.P. art. 771, the granting of a motion for mistrial is discretionary rather than mandatory, and is appropriate only when an admonishment cannot cure the error. See, State v. Goods, 403 So.2d 1205 (La.1981).
Mistrial is a drastic remedy warranted only when an error at trial results in substantial prejudice to a defendant which effectively deprives him of a fair trial. State v. Edwards, 420 So.2d 663 (La.1982).
A prejudicial remark by an experienced police officer should be viewed with considerable concern as to the fairness of the trial and it may require granting a mistrial, especially if the remark was precipitated by or should have been anticipated by the district attorney. State v. Douglas, 389 So.2d 1263 (La.1980). Generally, however, a prejudicial comment by a police officer does not warrant mistrial absent a showing that the policeman has exhibited a pattern of unresponsive answers of improper intent. State v. Tatum, 506 So.2d 584 (La.App. 4th Cir.1987).
In this case, the defendant did not demonstrate that the policeman had exhibited a pattern of unresponsive answers in *1067 other cases. Additionally, the reference made is to other crimes committed by a witness, not by the defendant.
The defense, however, argues that the comment was nonetheless prejudicial because it made the jury disbelieve Alorado whose testimony corroborated the defendant's testimony that he had shot the victim in self-defense. This argument is without merit. The defendant was charged with second degree murder. State witness Fallia testified that the victim was unarmed and did not attack the defendant, thus supporting a second degree murder conviction. The defense argued self-defense. The defendant testified that the victim was armed with a knife and attacked him. Alorado did not see Cobas attack the defendant, but testified that Cobas had a knife in his hand when he fell down after the shooting. The jury, in rendering the lesser verdict of manslaughter, could have conceivably given weight to Alorado's testimony and concluded there was sufficient provocation under R.S. 14:31. The defense has thus not demonstrated that the defense was substantially prejudiced by the officer's testimony regarding Alorado's prior arrests.
The defense alternatively argues that prejudice need not be shown when there is an intentional violation of an evidentiary rule. It cites no facts to support a conclusion that either the prosecutor or the officer was intentionally attempting to avoid an evidentiary rule. There is no reason to conclude that the officer's comment was not inadvertent. A review of the testimony indicates that the purpose of the testimony was not to bring out Alorado's prior offenses, but to show that Alorado would not have been available to testify for the defendant had the State not located him on the morning of trial. Because the comment was not prejudicial, this assignment of error is without merit.

SUPPLEMENTAL ASSIGNMENT OF ERROR
The defense contends that the trial court erred in allowing the State to exercise fourteen peremptory challenges on voir dire. The State contends that the defense is precluded from raising this argument because it failed to make a contemporaneous objection to the State's action.
According to a letter written by the court reporter, there is no transcript of the voir dire proceedings. The only record of what happened during voir dire is contained in the minute entry and on the jury selection list. The jury selection list reflects that the State did in fact exercise fourteen peremptory challenges, two more than are allowed under C.Cr.P. art. 799. However, neither document indicates that the defense objected to the State's action.
C.Cr.P. art. 841 provides in pertinent part:
"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."
In State v. Bazile, 386 So.2d 349 (La. 1980), the defense objected to the voir dire procedure employed by the trial court after the jurors had been selected and sworn, but before opening arguments. The Louisiana Supreme Court held that the propriety of the voir dire procedure could not be considered on appeal because the defense had failed to timely object to the procedure as required by C.Cr.P. art. 841.
In State v. Spencer, 446 So.2d 1197 (La. 1984), the defense objected to the composition of the jury on the second day of trial. It contended that blacks had been improperly excluded from the jury and sought a mistrial. The trial court denied its motion for mistrial. On appeal, the court found that the trial court had not erred in denying the defense's motion for mistrial. The court held that defendant had waived any objection he might have had to the composition of the jury by failing to timely object at the time of jury selection as required by C.Cr.P. art. 841.
In State v. Morris, 429 So.2d 111 (La. 1983), the defendant objected to the voir dire procedure employed by the trial court after the jury was selected and sworn. She contended that the examination of a large number of veniremen at one time deprived the defendant of a fully effective voir dire. The trial court overruled the *1068 objection. The Louisiana Supreme Court refused to consider the propriety of the trial court's voir dire procedure on appeal because the defendant's objection, made after the jury was selected and sworn, was untimely under C.Cr.P. art. 841.
Under C.Cr.P. 841 and the jurisprudence thereunder, as discussed above, the defense cannot raise this issue on appeal because it failed to make a contemporaneous objection during voir dire. Thus, this assignment of error is without merit.
Accordingly, the conviction and sentence of defendant Eutico Torres is hereby affirmed.
AFFIRMED.