liMURRAY, Judge.
After a two day trial on February 16 and 17, 1995, Bobby Miskell was convicted of one count of aggravated rape and one count of aggravated kidnapping. On May 2, 1995, he was sentenced on each count to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Mr. Miskell appeals his convictions. We affirm.

FACTS:

On June 21, 1994, at approximately 6:30 a.m., L.W.[1] was walking toward the bus stop at Dwyer and Lafon Streets to go to work at Loyola summer camp. Carl Blouin, who was driving by on his way to work, saw L.W. and a man walking parallel to her on the opposite side of the street. He was suspicious and pulled over to watch in his rear view mirror. Mr. Blouin testified that he saw the man (later identified as Bobby Miskell) cross the street, grab L.W. by the neck from behind and drag her down an alleyway. Mr. Blouin immediately drove to the Price’s house, friends of his who lived on the same block. He told the Price family about what he had seen and 911 was called.
|2While waiting for Robert and Mario Price, father and son respectively, to get ready, Mr. Blouin returned to the alley. He saw Mr. Miskell on top of the victim, whose shorts had been removed and was on her back on the ground. The victim motioned to Mr. Blouin for help. When the victim told her attacker that someone saw them, he dragged her further behind a house. The victim testified that she was wearing a bathing suit under her clothes. This was pushed aside and she was vaginally raped.
After locating the victim and Mr. Miskell, Mr. Blouin returned to the Price house. The three men then returned to the alley, but the victim and her attacker were gone. They then split up to look for the pair. Mario Price, who was armed with a gun, found Mr. Miskell on top of the victim with his buttocks exposed, “going up and down on top of her.” Robert Price came upon the scene shortly thereafter. He also saw Mr. Miskell on top of the victim. As he and his son approached, Mr. Miskell ran. Mario Price testified that *1094 he drew his gun and fired one shot in the air and yelled “freeze.” When Mr. Miskell continued running, he fired two shots into the ground. Mr. Miskell then ran towards Mr. Blouin, who successfully tripped him. He was detained by the three men until the police arrived.
Officer Woodford, the first police officer on the scene, called for a rape investigator. Detective Ryals arrived and interviewed the victim. He then brought her to the police car where she positively identified Bobby Miskell as the man who raped her.
Dr. Maazouf, the doctor who examined the victim at Charity Hospital, prepared a rape kit. He testified that he found abrasions, fresh blood, and mobile live sperm near the victim’s genitals. The victim also had a fresh bruise on her neck consistent with fingerprints.
At trial, Carl Blouin, Mario Price, Robert Price and the victim all positively identified Mr. Miskell. Mario Price and Robert Price further testified that they never lost sight of the defendant from the time they saw him on top of the victim until they restrained him.
laThe defense presented two witnesses. The defendant’s mother testified that she lived one block from the crime scene. On the morning of the crime, the defendant left her home shortly after 6 a.m., after stopping by for a short visit. The defendant testified on his own behalf. He stated that he had spent the night at his sister’s nearby house, but stopped by his mother’s for “a minute” the morning in question. After leaving his mother’s, Mario Price pulled up in a truck, and claimed that the defendant had raped his sister. Mario Price then pulled a gun and the defendant ran. He claimed that he was shot at four times and was struck once in the leg. He denied raping the victim.

DISCUSSION:

A review of the record reveals no errors patent.
In his first assignment of error, the appellant contends that the trial court erred when it denied his motion for scientific tests. In that motion, the defendant stated that the samples removed from the victim contained live sperm but that no tests had been performed on them to determine blood type or DNA. The defendant requested the testing on February 14, two days before trial.
Defendant’s motion was not timely. La.Code Crim.Proc. art. 521 provides that pre-trial motions shall be made or filed within fifteen days after arraignment, unless a different time is fixed, or upon a showing of good cause that the fifteen days in inadequate. Here, the defendant was arraigned on August 8, 1994. Discovery motions and motions to suppress were filed on November 3, 1994, and were heard on November 15, 1994. A trial date was set for January 10, 1995, but was continued on that date because of another trial in progress. Two days before the new trial date the defendant filed the motion for scientific tests. However, because the trial court did not overtly deny the defendant’s motion as untimely, the merits will be discussed.
The appellant argues that the sole issue in this case was identity because neither the fact of the rape nor the issue of consent were raised as defenses. The defendant correctly notes that DNA evidence is relevant citing La.Rev.Stat._JR5:441.1.[2] From that, Mr. Miskell argues that the trial court’s refusal to order that DNA tests be run at State expense resulted in prejudicial error because the outcome of such tests could have proved the defendant’s innocence.
Mr. Miskell cites no law with regard to ordering scientific tests on the defendant’s behalf. At the hearing on the motion, the State relied upon State v. Balfa, 506 So.2d 1369, 1375 (La.App. 3rd Cir.1987), in which the court stated:
Furnishing counsel to the indigent defendant is not enough if counsel cannot secure information on which to construct a defense. State v. Madison, 345 So.2d 485 (La.1977). The Supreme Court has recognized that the state should supply funds upon a showing by the defense that the *1095 indigent accused is unable to obtain existing evidence crucial to his defense. State v. Monroe, 397 So.2d 1258 (La.1981). Madison, supra. When the issue is considered on review the question becomes whether the denial of funds has substantially prejudiced the defendant at trial. State v. Prestridge, 399 So.2d 564 (La.1981).
See also State v. Johnson, 553 So.2d 865 (La.App. 1st Cir.1989), in which the defendant sought appointment of a pathologist to obtain information concerning the pattern of gunshot wounds, the length of survival and physical activity of the victim after the gunshot wound, the drug and chemical levels of the victim, and the identification of blood stains on the victim, the defendant, and in the area of the shooting. The defendant claimed that, under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), he was entitled to the appointment of an expert to assist him on issues likely to be significant factors in his defense. The First Circuit stated:
In Ake v. Oklahoma, supra, the defendant was charged with first degree murder and his sole defense was insanity. The United States Supreme Court concluded that the defendant was entitled to an independent psychiatric examination. However, the Court first set forth several factors relevant to the question of whether or not the defendant’s sanity was likely to be a significant factor, requiring, as a minimum, a prima facie showing that the defendant’s sanity was a crucial factor in his defense and that the trial court was on notice of that fact when the request for a court-appointed psychiatrist was made.
State v. Johnson, 553 So.2d at 867.
In the instant case, when the trial court denied the defense motion, the court noted that the defendant had a right to the DNA test only if, in its absence, an injustice would be perpetrated. Applying this standard, which is the same standard during review, the trial court considered the pretrial hearings. The trial court specifically noted that this case did not involve circumstantial evidence; the defendant had been “caught with his pants down and his private’s (sic) exposed.” The trial court stated that the direct evidence against Mr. Miskell was so strong that if the tests did come back negative as to him, the court would doubt the merits of the test.
In light of the evidence presented at trial, the trial court’s ruling is not erroneous. The two eyewitnesses who pursued Mr. Miskell testified that they never lost sight of him during the chase. This testimony, coupled with the victim’s identification and the identification by Carl Blouin, leaves no likelihood of a misidentifieation. Therefore, although Mr. Miskell contends that he raised only a defense of lack of identity, identity was not a substantial factor in this case, and he was not prejudiced by the denial of his motion. This assignment of error has no merit.
In his second assignment of error, Mr. Miskell contends that the trial court erred when it denied a motion for mistrial based upon prejudicial remarks made by a prospective juror during voir dire. The remark pertained to the juror’s service in a prior case wherein he felt threatened by someone in the hallway who spoke to him after he was dismissed. The prospective juror stated that he believed his life would be in jeopardy if he were to find the defendant guilty. Mr. Miskell argues that this comment would tend to make other jurors believe that this defendant was a bad person.[3] However, no objection to the continuation of voir dire with the same panel is noted; from that panel, one juror and an alternate were selected. The motion for mistrial by the defense did not come until after the first two witnesses had testified.
Louisiana Code of Criminal Procedure art. 841 provides that an irregularity or error cannot be raised on appeal unless an objection was made at the time of the occurrence. With regard to alleged errors during the jury selection process, any objection must be made before the jury is selected and sworn. See State v. Torres, 580 So.2d 1064, 1067-68 (La.App. 4th Cir.1991) and cases cited therein. In the instant case, the objection and motion for mistrial came after the jury *1096 was sworn and after two witnesses had -already testified. This assignment will not be considered. The comment by the prospective juror was not related to Mr. Miskell. Rather it concerned an alleged threat related to the juror’s prior jury service.
In his third and final assignment of error, Mr. Miskell again contends that the trial court erred when it denied a motion for mistrial. In this instance, the defense sought a mistrial because Detective Matthew Ryals testified that sixteen dollars cash were taken from the defendant at the lock-up. The defense contended that he had not been advised pretrial that any evidence was seized; moreover, the State at the motion hearings had indicated that a motion to suppress evidence did not lie. Mr. Miskell argues that from the reference to the money seized from him, the jury could have inferred that it was money taken from the victim. He concedes that the trial court prohibited the State from questioning the victim regarding any robbery.
Before considering the merits of this assignment, it must again be noted that no timely objection or motion for mistrial was made. While the record indicates that the defense moved to approach the bench and noted an objection, the basis for any objection is not reflected on the record. In State v. Bennett, 591 So.2d 783 (La.App. 4th Cir.1991), this Court held that a bench conference was not sufficient to constitute a contemporaneous objection as required by La. Code Crim.Proe. art. 841, even though the minute entry of trial stated that out of the presence of the jury all objections were, noted by defense. Because those objections were not placed on the record, this Court refused to consider the issue. In the instant case, the motion for mistrial made by the defense was made long after Detective Ryals testified and therefore was not timely.
Further, assuming that this issue was preserved for review by the defendant’s objection during the bench conference, the money would have been admissible because it was among Mr. Miskell’s personal effects taken from him and inventoried during the booking procedure following his lawful arrest, and preparatory to his incarceration. State v. Nuccio, 454 So.2d 93, 98-99 (La.1984). In fact, however, the money was never even entered into evidence. The brief reference to it was not improper, and Mr. Miskell was not entitled to a mistrial. This assignment is without merit.
^Accordingly, for the reasons stated above, the convictions and sentences are affirmed.
AFFIRMED.

. The victim will be referred to by initials only.

. Evidence of deoxyribonucleic acid profiles, genetic markers of the blood, and secretor status of the saliva offered to establish the identity of the offender of any crime is relevant as proof in conformity with the Louisiana Code of Evidence.

. The prospective juror who made the comment, juror number 317, was excused for cause.