BECKER, Judge.
Defendant, Edward Nelson, appeals from his conviction on two counts of simple burglary of an inhabited dwelling and one count of attempted simple burglary of an inhabited dwelling. Defendant was multiple billed on the first count of simple burglary and sentenced to eighteen years at hard labor without benefit of parole or good time. On the second count of simple burglary, he was sentenced to twelve years at hard labor without benefit of probation, parole or suspension of sentence for the first year. On the attempted simple burglary conviction, defendant was sentenced to six years at hard labor without benefit of probation, parole or suspension of sentence for the first year. The sentences on all three counts are to be served concurrently. The defendant was also sentenced in a separate matter on the same day. That sentence was twelve years at hard *1060 labor without benefit of probation, parole or suspension of sentence and is to run consecutively to the other sentences.
On appeal, in addition to asking for a review for errors patent, the defendant, in proper person, assigns nine specifications of error:
(1) The evidence failed to rule out the possibility that the defendant was misidentified.
(2) The prosecution failed to prove every essential element of the crime;
(3) The evidence used against defendant was obtained pursuant to an unlawful search and seizure;
(4) Defendant was denied effective assistance of counsel;
(5) The trial court erred in refusing to allow defendant to defend himself and cross-examine the witnesses;
(6) Defendant’s sentence under the multiple bill is illegal;
(7) Defendant was denied effective assistance of counsel in his appeal;
(8) The prosecution failed to prove that the offense occurred in Orleans Parish; and
(9) The prosecution suppressed evidence favorable to the defendant.
On August 12, 1987, defendant, Edward Nelson, was observed by Mrs. Dorothy Bailey standing on the porch at 233 South Scott Street as she returned to her home across the street. Mrs. Bailey told her husband that the man looked suspicious. Mr. Bailey opened the front door and saw defendant still on the neighbor’s porch by the front window. Upon observing that the defendant was attempting to remove the window screen, Mr. Bailey told his wife to call the police.
While Mrs. Bailey was calling the police and providing a description of the defendant, Mr. Bailey stayed at the door watching the defendant attempting to open the window with some sort of tool. The defendant then went back to the front door and tried to open it.
As a marked police car proceeded up the street, the defendant descended the front steps and walked toward the street. Mr. Bailey and Officer Dwayne Scheuermann (one of the police officers in the marked vehicle) saw defendant throw something into the gutter along the street. Officer Wilfred Eddington, the other officer in the marked vehicle, retrieved the object which was a tire tool. The defendant was then detained and patted down. A screwdriver was found in his pants pocket. Mr. and Mrs. Bailey came out of their house and informed the police officers that the defendant was the person they saw trying to break into the house located at 233 South Scott Street.
The defendant was placed under arrest for attempted simple burglary of an inhabited dwelling. Upon a search of his person, Officer Scheuermann found a black sock, a bracelet and a checkbook bearing the name of Daniel Muhs.
Officer Scheuermann, while on the scene, received information from a N.O.P.S.I. meter reader, Harold Hamilton, who had seen the defendant earlier that morning in the backyard at 215 South Scott. The defendant told Hamilton that he was selling real estate, but Hamilton became suspicious and asked a neighbor to call the police.
Scheuermann proceeded to the rear of 215 South Scott where he noticed a broken pane of glass in a window. As the window latch was not locked, Scheuermann climbed through the window. He noticed that the house had been ransacked and found the name of Daniel Muhs on the bills and other papers in the house. The defendant was then placed under arrest for the burglary at 215 South Scott Street.
Officer Scheuermann continued his investigation through the neighborhood. At 3921 Palmyra Street, Scheuermann found the glass front door smashed. At that time, the owner of the house, Mrs. Mary McCrady, and her grandson had just returned home and found the house burglarized. They were on their way to call the police when they encountered Officer Scheuermann. Mrs. McCrady was asked if she recognized the defendant who was then in the police car and/or the bracelet taken *1061 from the defendant. Mrs. McCrady identified the bracelet as having belonged to her deceased daughter but of which Mrs. McCrady had possession. The defendant was then placed under arrest for the burglary of an inhabited dwelling at 3921 Palmyra Street.
The evidence seized from the defendant was handed over to Officers Edward Cooper and Joel Parretta. Officer Cooper gave defendant his Miranda warnings and asked him if he had a car. Defendant responded in the negative. However, Mr. Hamilton had informed the police that he had seen the defendant in a bronze Oldsmobile Cutlass. A bronze Oldsmobile Cutlass was parked across the street from 215 South Scott. Upon opening the door of the Cutlass, Officer Cooper found a folder containing a driver’s license bearing the defendant’s name. Nelson was shown the license and admitted the vehicle belonged to him. No other evidence was taken from the defendant’s automobile.
At trial, the defendant testified on his own behalf. He stated that he was in the area because his car had broken down. Nelson admitted seeing Hamilton several times during the morning. He stated that he jokingly told Hamilton he was selling real estate, but he really was in the backyard of 215 South Scott only to get water for his car. He also denied discarding a tire tool upon the arrival of the police.
He further testified that while he was sitting in the police car, another police vehicle arrived on the scene with a black male sitting in the back. Defendant claimed that the police officer said that the other black male was his partner and that there were four burglaries with which to charge them. According to the defendant, the other person’s name was “E. Martin.” Defendant testified that the police officers attempted to have “E. Martin” name the defendant as his partner. No evidence was produced at trial to corroborate this testimony.
At trial, Nelson also stated that he saw Officer Scheuermann come out of 3921 Palmyra Street holding the bracelet and then place it in the glove compartment of the police car. The defendant testified that he overheard Mrs. McCrady’s grandson ask Scheuermann why he was taking the bracelet. The trial testimony of Mrs. McCrady’s grandson, Blake McCrady Woods, did not corroborate defendant’s testimony in this matter.
Upon cross examination, defendant did admit to prior convictions for burglary and heroin distribution.
After deliberation, the jury returned verdicts finding the defendant guilty on all three counts: simple burglary of an inhabited dwelling at 215 South Scott Street, simple burglary of an inhabited dwelling at 3921 Palmyra Street, and attempted simple burglary of an inhabited dwelling at 233 South Scott Street.
ERRORS PATENT
A review of the record reveals no errors patent.
ASSIGNMENTS OF ERROR NUMBERS 1 & 2
Defendant argues that the evidence presented at trial failed to rule out the possibility that defendant was misidentified which thereby creates reasonable doubt that he committed the burglaries. In support of his arguments, defendant refers to the witnesses’ descriptions of the suit defendant was wearing the day of his arrest. Mr. and Mrs. Bailey testified that it was grey; Officer Scheuermann testified that it was brown; and Hamilton testified that it was purple. Yet, all the witnesses, when shown the suit, identified it as the one defendant was wearing at the time of his arrest. Further, all of the witnesses positively identified the defendant. The circumstances under which they were able to observe him show the reliability of their respective identification. State v. Larose, 510 So.2d 732 (La.App. 4th Cir.1987), writ denied 516 So.2d 129 (La.1987). Defendant makes no argument that the identification procedure was unduly suggestive and thus unconstitutional under Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Therefore, assignment of error number one is without merit.
*1062 The defendant also argues that the State failed to prove every essential element of the three offenses charged, particularly the burglaries at 215 South Scott Street and 3921 Palmyra Street. He contends that there was no evidence introduced which connected him with the burglaries at 3921 Palmyra and 215 South Scott except for the bracelet and checkbook which he alleges were actually taken by Officer Scheuermann.
The defendant sets forth the hypothesis that Officer Scheuermann smashed the door at 3921 Palmyra and took the bracelet from the house to plant on the defendant. The defendant further suggests that Scheuermann climbed into the window at 215 South Scott and took the checkbook which he also planted on defendant. Defendant failed to produce any evidence at trial which would support such theories.
As there is absolutely no evidentiary basis for defendant’s allegations, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 3
Defendant argues that the evidence used against him was obtained pursuant to an unlawful search and seizure. He contends that there was no probable cause to arrest him, and, thus, the evidence was not seized incident to a lawful arrest. A search incident to a lawful arrest is one of the exceptions that allows a search to be conducted without a warrant. Such a search is justified in order to discover weapons that may threaten the safety of the arresting officer and to prevent the concealment and destruction of evidence. State v. Tomasetti, 381 So.2d 420 (La.1980). In order to justify a search incident to an arrest, an arrest must have already occurred and the arrest itself must have been lawful. State v. Tomasetti, supra; State v. Marks, 337 So.2d 1177 (La.1976).
An arrest made in a public place without a warrant is valid if founded on probable cause, regardless of the presence or absence of exigent circumstances. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), rehearing denied, 424 U.S. 979, 96 S.Ct. 1488, 47 L.Ed.2d 750 (1976). Probable cause exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Tomasetti, supra; State v. Marks, supra. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Marks, supra.
There was sufficient probable cause for Officers Scheuermann and Eddington to arrest the defendant. The testimony elicited at trial revealed that the officers arrested the defendant after the telephone call from the Baileys and their own observations of defendant discarding the tire tool. The United States Supreme Court has found that where an unquestionably honest citizen reports criminal activity, rigorous scrutiny of the basis of his knowledge is unnecessary. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The source of the information was reliable since the Baileys were witnessing defendant’s actions as Mrs. Bailey was informing the police. There was no reason not to trust the information given by the Baileys. Moreover, defendant’s discarding of the tire tool as the police arrived was a suspicious act which corroborated the information given by the Baileys. Since there was probable cause to arrest the defendant, the search incident to his arrest was lawful. The items seized in the search were admissible at the trial.
Defendant’s assignment of error number three in without merit.
ASSIGNMENT OF ERROR NUMBER 4
Defendant contends that he was denied effective assistance of counsel during his trial. In support of his argument, defendant alleges that his attorney performed no investigation prior to trial and did not discuss with him any type of trial strategy. The defendant also complains that his attorney allowed the introduction of inadmis *1063 sible evidence without objection and only asked a total of fifty-one questions on cross examination of the prosecution’s witnesses. Defendant seeks either a full evidentiary hearing on the issue of ineffective assistance or the reversal of his convictions.
The issue of ineffective assistance of counsel is more properly raised in an application for post-conviction relief to be filed immediately in the trial court where a full evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Petta, 496 So.2d 390 (La.App. 4th Cir.1986) writ denied, 533 So.2d 10 (La.1988). However, where the record on appeal discloses sufficient evidence upon which to make a determination of counsel’s effectiveness, a decision on the issue may be made on appeal in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La.1983); State v. Haywood, 516 So.2d 196 (La.App. 4th Cir.1987).
Defendant’s allegations of ineffective counsel, in particular the allegation of counsel’s failure to investigate, cannot be addressed by this court as the record does not disclose sufficient evidence for a determination of this issue. Accordingly, defendant’s allegations should be raised and considered in conjunction with an application for post-conviction relief to be filed in the trial court.
ASSIGNMENT OF ERROR NUMBER 5
Defendant argues that the trial court erred in refusing to allow defendant to defend himself and cross-examine witnesses, particularly Blake Woods, the grandson of Mrs. McCrady. During a recess, the defendant asked that Mr. Woods be brought in as a witness because, according to the defendant, Mr. Woods supposedly heard Officer Scheuermann say that the jewelry was going to be “put on” defendant. Defendant asserts his right to confrontation was violated when Mr. Woods was brought to court by an investigator for the district attorney. He further argues that his rights were violated when defense counsel, not defendant himself, cross-examined Mr. Woods.
The trial transcript does not reveal that the defendant requested permission from the court to cross-examine Mr. Woods. However, the sentencing transcript does make a reference to defendant’s being allowed to represent himself and his subsequent refusal to take part in the proceedings.
The trial court apparently gave defendant the opportunity to participate in his trial. Defendant simply failed to avail himself of this opportunity. He has no basis for complaining on appeal where he did not object in the trial court. State v. Allen, 431 So.2d 808 (La.App. 4th Cir.1983).
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER 6
Defendant contends that at the sentencing hearing, he was multiple billed on each count in violation of State v. Sherer, 411 So.2d 1050 (La.1982), appeal after remand, 437 So.2d 276 (La.1985). A review of the sentencing transcript reveals that the defendant was multiple billed only on the first count of simple burglary of an inhabited dwelling.
This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 7
Defendant alleges that he was denied effective assistance of counsel on appeal. The basis for his argument is that his appellate counsel filed only an errors patent appeal.
The filing of an errors patent appeal is not ineffective assistance when the claims raised in the defendant’s pro se brief lack merit. State v. Marsh, 527 So.2d 377 (La.App. 4th Cir.1988) writ denied, 532 So.2d 130 (La.1988). In the present case, none of the specifications of error raised by the defendant has been found to be meritorious. Thus, there has been no showing that appellate counsel’s filing of an errors patent appeal constitutes ineffective assistance of counsel in this appeal.
The assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 8
Defendant’s next assignment of error is that the State failed to establish beyond a reasonable doubt that the crimes occurred *1064 in Orleans Parish. Defendant contends that there is no evidence to show venue in Orleans Parish.
The Code of Criminal Procedure Article 611 provides that a trial shall take place in the parish where the offense was committed. The objection of improper venue may be raised by a motion to quash. Thus, defendant’s objection of improper venue should have been raised prior to trial. State v. McDermitt, 406 So.2d 195 (La.1981).
Notwithstanding defendant’s failure to file the motion to quash, the state still had the burden of proving proper venue. LSA-C.Cr.P. art. 615 provides in pertinent part:
“Even if the issue of venue has been passed upon by the judge prior to trial, the state on the trial shall have the burden of proving proper venue beyond a reasonable doubt.”
A review of the record shows that the State met its burden. The burglaries were investigated by the New Orleans Police Department and one of the witnesses was a New Orleans Public Service Inc. meter reader.
Further, the trial court is allowed to take judicial notice of the fact that geographic locations mentioned by the witnesses are within Orleans Parish, even if Orleans Parish is never specifically mentioned by name. State v. Adams, 394 So.2d 1204 (La.1981). The trial court was within its discretion in recognizing that the street locations mentioned in the witnesses’ testimony are clearly within the boundaries of Orleans Parish. This court can likewise take judicial notice that these locations on South Scott and Palmyra Streets are in New Orleans.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER 9
In his final assignment of error, defendant claims that the State suppressed evidence favorable to the defense. He argues that the fingerprint evidence introduced by the State would have indicated that the defendant did not commit the burglaries. Defendant states that the existence of the fingerprints was not made known to him prior to trial. He further asserts that the evidence was intentionally concealed until trial because the fingerprints were not those of defendant. Defendant argues that under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), he was entitled to the fingerprint evidence since it was exculpatory.
Officer Cindy Bauman of the New Orleans Police Department took fingerprints from the door at 3921 Palmyra Street and from the rear window at 215 South Scott Street. Officer Bauman testified at trial about the taking of the fingerprints but did not testify as to the identity of the fingerprints. No testimony was elicited from any witness as to the identity of the fingerprints.
The trial transcript does not reveal that any request for exculpatory evidence or material was made by the defendant prior to trial. As such, there is nothing available to this court for review.
This assignment of error is without merit.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.