598 So.2d 454 (1992)
STATE of Louisiana, Appellee,
v.
Nelvelle Ray POWELL, Appellant.
No. 23254-KA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1992.
*458 Hunter, Scott, Blue, Johnson & Ross by Robert C. Johnson, Monroe, for appellant.
Madeleine Slaughter, Asst. Dist. Atty., Monroe, for appellee.
Before NORRIS, BROWN and STEWART, JJ.
NORRIS, Judge.
Nelvelle Ray Powell was charged by bill of information with the armed robbery and attempted second degree murder of Odis L. Ray. He proceeded to a jury trial and was found guilty by a vote of 11-1 of armed robbery and aggravated battery, La.R.S. 14:64, 34. The district court imposed concurrent sentences of nine years at hard labor for the aggravated battery and 15 years at hard labor for the armed robbery, the latter without benefit of parole, probation or suspension of sentence. Powell now appeals, advancing 11 assignments of error.
We find merit in the eleventh assignment, which urges that convictions for both offenses on these facts amount to double jeopardy. The conviction and sentence for aggravated battery are vacated. The other assignments do not present reversible error; thus the conviction and sentence for armed robbery are affirmed.

Facts
On January 19, 1990 the victim, Odis Ray, was a customer at Coney Island, a small bar and grill on DeSiard Street in Monroe. He was there drinking beer the greater part of the afternoon, as observed by Scott Martinez, a co-owner, and Birdie Lowe, an employee, of Coney Island. About 6:30 p.m. they saw Ray step outside with two large black men and walk toward the rear of the building. Suspecting something was amiss, Mr. Martinez called the police. Quickly responding to the call, Officer Boyter saw two large black men pushing a bicycle about one-half block away from Coney Island. One of the men was in a bright yellow sweatshirt, the other a gray sweater. When they saw the police car they dropped the bike and ran. Officer Boyter did not pursue them, but radioed their description and picked up the bicycle before going to Coney Island. The bike was bloodstained.
At Coney Island Officer Boyter spoke to Mr. Martinez, who said that one of the black men who led Ray outside was in a yellow sweatshirt. Officer Boyter went behind the building and found Ray lying face-up on the concrete, severely beaten in the face and bleeding badly. Officer Boyter administered first aid and called an ambulance. Detective Fisher arrived and searched the scene. Blood was splattered on the wall and sealed rear door of Coney Island; Ray's wallet was lying nearby, open and its contents pulled out; his hat and boots had been pulled off and were nearby. Detective Fisher could find only 31¢ in coins spilled on the ground. Also on the ground was a broken chair back and detached heavy chair piece which appeared to have blood on it. The victim was taken to St. Francis Medical Center and later transferred to LSU Medical Center in Shreveport.
Detective Fisher also interviewed Birdie Lowe and Gloria Beals, a Coney Island customer who had been with Ray that afternoon. Although no one had seen the attack, the witnesses gave a description and the police issued a BOLO for the suspected *459 assailants, black men over 6' tall and 190 lbs., one of them wearing a bright yellow sweatshirt.
Patrolling nearby, Officer Matthews heard the BOLO and radioed back that an hour or so earlier he had seen Nelvelle Powell, who answered the description. Officer Matthews had known Powell for about five years and seen him that evening wearing a yellow sweatshirt and walking on foot. Powell had run away when the police car drew near, so Officer Matthews followed him to a bar called A Hole In The Wall, went inside and spoke to him. The officer did not arrest him as he had committed no crime. After receiving the BOLO, Officer Matthews radioed that Powell met the suspect's description.
Around 9:00 p.m., Officer Hodnett was patrolling on South 10th Street, six blocks from Coney Island, and saw Powell standing in front of the Tenth Street Social Club. Powell did not flee, but Officer Hodnett and Detective Fisher noticed what appeared to be bloodstains on his yellow sweatshirt and white tennis shoes. Powell was cooperative and agreed to come to the station for questioning. He did not give a statement.
Detective Fisher prepared a photo lineup with a file picture of Powell and five other men with similar facial characteristics. Mr. Martinez and Gloria Beals positively identified Powell's picture as one of the men who had led Ray outside before the attack. Birdie Lowe could not pick a photo from the lineup, but she identified him at trial. Officer Boyter could not identify Powell as one of the men who dropped the bicycle and fled shortly after the attack.
After Mr. Martinez and Ms. Beals made the photo identification, Detective Fisher formally arrested Powell. Stains on the sleeve of the sweatshirt were later tested at the North Louisiana Crime Lab and found not to be blood; however, the stains on the shoes were human blood, and stains on Powell's jeans were blood of the type shared by both Powell and Odis Ray. Police found nothing of Ray's on Powell's person.
Through a reliable confidential informant, police later arrested another man, Darnell Mack, on suspicion of being Powell's accomplice in the attack. He was tried separately and acquitted.
Dr. Dennis Sullivan, who treated Ray at the St. Francis emergency room, testified that Ray sustained multiple facial injuries with fractures of the maxillary, nasal, orbital and sphenoid bones, a large laceration over one eye, and would likely have suffocated in his own blood without medical attention. Dr. Sullivan testified that these injuries were too severe to have been inflicted by a bare fist. However, the chair piece, which officers at the scene had considered to be the weapon, was not sent to the Crime Lab for blood analysis. Ray's blood alcohol level at the hospital was .25%, and he tested positive for marijuana. He did not remember anything about the incident, only that he was leaving Coney Island after dark and woke up at the LSU Medical Center. Needless to say he could not identify either of his assailants, and testified he had never seen Powell before.

Discussion: Motion to suppress
By his seventh assignment Powell urges the trial court erred in denying his pretrial motion to suppress any physical evidence or statements taken from him after his warrantless arrest. The motion alleges that Powell was arrested solely on the basis of information from Mr. Martinez, Mrs. Lowe and Ms. Beals, none of whom observed the attack, thus negating probable cause or reasonable cause to believe that Powell had committed an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Powell did not give a statement but his blue jeans, stained with blood that matched the victim's type, were seized and used as incriminating evidence at trial.
A peace officer may, without a warrant, arrest a person when the peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer. La.C.Cr.P. art. 213(3); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 *460 L.Ed.2d 134 (1959). Reasonable cause to arrest without a warrant is the equivalent of probable cause to obtain an arrest warrant. State v. Weinberg, 364 So.2d 964 (La.1978); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a person of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Morvant, 384 So.2d 765 (La. 1980); State v. Billiot, 370 So.2d 539 (La.), cert. denied 444 U.S. 935, 100 S.Ct. 284, 62 L.Ed.2d 194 (1979). Mere suspicion will not justify an arrest, but proof sufficient to convict is not required. State v. Bell, 395 So.2d 805 (La.1981); State v. Randolph, 337 So.2d 498 (La.1976); State v. Massey, 535 So.2d 1135 (La.App. 2d Cir.1988).
Furtive action and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of the crime, they are proper factors to be considered in the decision to effect an arrest. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); State v. Green, 524 So.2d 927 (La.App. 2d Cir.), writ denied 532 So.2d 129 (La.1988); State v. Fuller, 446 So.2d 799 (La.App. 2d Cir.), writ denied 447 So.2d 1079 (La.1984). A good description of the suspect's clothing is another factor. State v. Goodson, 444 So.2d 1337 (La.App. 2d Cir.), writ denied 449 So.2d 1027 (La.1984). Bloody clothing on the suspect is also a factor. State v. Cheatham, 519 So.2d 188 (La.App. 4th Cir. 1987), writ denied 523 So.2d 228 (La.1988).
An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused rather than at the precise time an officer tells the accused he is under arrest. State v. Raheem, 464 So.2d 293 (La.1985); Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
Powell correctly points out that there were several gaps in the information the Coney Island witnesses gave the police: they did not know how much, if any, money Ray was carrying when he left the bar; they were not aware that the assailants were trying to take anything of value from Ray; most importantly, they did not actually see the incident take place. However, these witnesses' information was strong in other respects. They reported that Ray had spoken to the two black men inside the bar, accompanied them out, apparently at their request, and all three turned the corner to go behind the building. Ms. Beals testified at trial that she wanted to go with them, but Ray and the two suspects used abusive language and told her to stay inside. Mr. Martinez, who knows his regular customers, did not recognize the black men and felt their conduct was suspicious enough to justify calling the police. Moments later Ray was found severely beaten behind Coney Island. All three Coney Island witnesses (including Ms. Beals, who testified she had seen Powell before) gave accurate and consistent descriptions of the suspects' size, hairstyles and clothing.
Other witnesses also testified at the motion to suppress. Shortly after receiving the call, Officer Boyter saw two men who met the description walking away from Coney Island; they dropped a bicycle and fled when they saw the police car; there was blood on the bicycle. Officer Matthews had encountered Powell in the general area an hour or so before the incident, and reported that his clothing matched one of the suspects'. Officer Hodnett did not testify at the motion to suppress, but Detective Fisher verified that Powell's clothing appeared to be stained with blood when he was located on South 10th St. and consented to accompany the officers to the station.
A crime had obviously been committed; given the arresting officers' observations, the reasonable and trustworthy information from the Coney Island witnesses and Officer Matthews's lead, there was reasonable cause to believe Powell had committed the offense. The fact that there was no eyewitness does not defeat the showing. See State v. Massey, supra; State v. Collins, 378 So.2d 928 (La.1979), cert. denied *461 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122 (1980). The trial court did not err in denying the motion to suppress.

Peremptory challenges of black jurors
By his third assignment Powell urges the trial court erred in granting the state's peremptory challenges of black prospective jurors. During voir dire 30 persons were called including six who were peremptorily challenged by the state; of these, three were black. The defendant timely objected to each of these challenges under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Three blacks ultimately served on the jury. Powell urges on appeal that "when one analyzes the record and the reasons given by the prosecutor for striking the prospective black jurors that were challenged by the state, it becomes quite apparent that in the final analysis the only reason that these jurors were excused was the fact that they were black." Br., 13.
Equal protection guarantees that criminal defendants have the right to be tried by a jury selected by nondiscriminatory criteria. Batson v. Kentucky, supra, and authorities therein; U.S.C.A. Const. amend. 14; La.C.Cr.P. art. 795. A black defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial.
To establish such a case, the defendant first must show that he is a member of a cognizable racial group, * * * and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." * * * Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. 476 U.S. at 96, 106 S.Ct. at 1723 (citations omitted).
Once the defendant makes his prima facie case, the burden shifts to the state to come forward with a neutral explanation for challenging the black jurors:
Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. * * * But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumptionor his intuitive judgmentthat they would be partial to the defendant because of their shared race. * * * Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirming his good faith in individual selections." * * * The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. 476 U.S. at 97-98, 106 S.Ct. at 1723-1724 (citations omitted).
With the defendant's prima facie case and the state's rebuttal, the trial court must determine whether the defendant has established purposeful discrimination. The trial court's determination is entitled to great discretion. Id., at 98, 106 S.Ct. at 1723; State v. Collier, 553 So.2d 815 (La. 1989); United States v. Forbes, 816 F.2d 1006 (5th Cir.1987). The Supreme Court cautioned, however, that the absence of discrimination in the making of some decisions will not immunize the state from its conduct in others. 476 U.S. at 95,106 S.Ct. at 1722. Striking a single black juror could constitute a prima facie case even when blacks ultimately sit on the panel and even when valid reasons exist for striking other blacks. United States v. Clemons, 843 F.2d 741 (3d Cir.), cert. denied 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988); State v. Collier, supra.
The three black venire members at issue were Iva Marshall, DeWitt Buckner and Jerry Brown; a partial voir dire transcript *462 involving these prospective jurors has been forwarded to this court.
Mrs. Marshall stated she was taking medication for high blood pressure; the medicine did not make her drowsy, but without it she had a high heartrate. She also stated that her daughter's wedding was less than a week away; she was still working on the decorations, and staying at court until 6:00 p.m. each day "is just going to put a strain on me." Supp., 3. Powell does not argue that no explanation was given for challenging Mrs. Marshall, but rather that the real reason was because she was black. The state asserts that it challenged Mrs. Marshall because she wanted direct evidence of the intent to kill and demanded more than circumstantial evidence to convict; also, she suffered from hypertension.
Mr. Buckner stated that he did "not really" want to sit in judgment of another human being, but would do so if he had to; he could vote to convict if he was convinced of guilt beyond a reasonable doubt. He said he had "quite a bit" of experience with people lying to him, and on further examination he stated that "lots of times they [police] make mistakes, wrong identities." Supp., 14. The prosecutor stated that she challenged Mr. Buckner because he has an open nonsupport case pending against him in the D.A.'s office, and because his son is under an arrest warrant. Defense counsel did not contest the validity of these assertions but urged they were not brought out on voir dire.
As for Mr. Brown, the prosecutor stated that she challenged him because he had a prior conviction for DWI-2d, pleaded down from DWI-3d, in 1980, and was charged in 1982 with three counts of theft which were dismissed. She cited the docket numbers of these offenses and stated she had copies of the court records in each. Defense counsel argued these facts were not adduced during voir dire. The trial court found each of the prosecutor's explanations to be racially neutral.
Powell reiterates on appeal that the tendered reasons for challenging these jurors do not overcome his prima facie showing that the challenges were racially motivated. We find otherwise. Mrs. Marshall stated she suffered from hypertension and was taking medicine for it; she was also a bride's mother in charge of an imminent wedding. This added stress would obviously affect her condition and diminish her attention to the trial. These factors supply a satisfactory, neutral explanation for the peremptory challenge. See State v. Worthy, 532 So.2d 541 (La.App. 1st Cir.1988), writ denied 538 So.2d 610 (La.1989).
The prosecutor cited Mr. Brown's prior conviction for DWI-2d by docket number of the same district court; she had copies of the records. This was an adjudicative fact of which the trial court was entitled to take judicial notice. La.C.Ev. art. 201A; Horowitz v. Henderson, 514 F.2d 740 (5th Cir.1975), fn. 1; Kowalski v. Gagne, 914 F.2d 299 (1st Cir.1990). A prospective juror's prior conviction is a satisfactory, racially neutral reason to challenge. See United States v. Williams, 822 F.2d 512 (5th Cir. 1987).
The situation with Mr. Buckner is not quite so clear. The prosecutor did not cite his nonsupport case by docket number, and admitted the charge against his son was based only on "good information and belief." Supp., 15. It would have been preferable for the prosecutor to place some evidence of Mr. Brown's (and his son's) criminal cases on the record. We recognize a potential for abuse when the prosecutor's explanation is not grounded on matters clearly established on the record.
However, reasons for the peremptory challenge need not meet the criteria of challenges for cause. In United States v. Forbes, supra, the district court excused a black juror whose sons "had been in trouble with the law." In affirming, the Court of Appeals noted that "it is too late for appellants to insist on an explanation they did not request at trial." Id., at 1011. Here, defense counsel did not contest the validity of the prosecutor's reasons for the challenge, and did not press for further proof. The trial court found the explanation *463 adequate, and counsel cannot now demand further explanation. Id.
It is interesting to note in Batson that while the Supreme Court stressed the state's obligation to provide racially neutral reasons for its peremptory challenges, it did not require concrete proof. In discussing the allocation of proof and the shift of burden, the Court analogized it to the burden in a Title VII discrimination case. Batson, fn. 20, citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In Burdine the court held that "an articulation not admitted into evidence will not suffice. Thus, the [employer] cannot meet its burden merely through an answer to the complaint or by argument of counsel." 450 U.S. at 255, 101 S.Ct. at 1094. The court in Batson considered the rule of Burdine but did not adopt its requirement of evidence on the record. The Supreme Court obviously did not intend to subject the state to the same burden of proof in voir dire as in the full trial of a Title VII discrimination suit. Similarly, the prosecutor should not be held to the same burden of proving the prior conviction of a prospective juror at voir dire as of proving the prior conviction of the defendant at, for example, an habitual offender hearing. Moreover, the prosecutor should not run the risk of embarrassing or alienating prospective jurors by confronting them with their criminal records unless it is absolutely necessary. Cf. State v. Collier, supra.
The Code of Criminal Procedure reinforces the distinction between voir dire and a full trial by requiring a racially neutral explanation but not the kind of proof necessary to support a challenge for cause. La. C.Cr.P. art. 795. Naturally it would have been better for the prosecutor to offer evidence of Mr. Buckner's (and his son's) prior legal problems to support the challenge. However, on the instant record the trial court was entitled to accept the prosecutor's explanations; as accepted, they offer racially neutral reasons for the challenges. This assignment does not present reversible error.

Motions for mistrial
By his fourth assignment Powell urges the trial court erred in denying three specific requests for mistrial during the trial. These motions arose during the testimony of Gloria Beals, Scott Martinez and Detective Fisher, and involved references to other crimes allegedly committed by the defendant or generally prejudicial conduct in the courtroom. La.C.Cr.P. arts. 770, 771 and 775 provide, in pertinent part:
Art. 770. Prejudicial remarks; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark but shall not declare a mistrial.
Art. 771. Admonition
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

*464 In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Art. 775. Mistrial; grounds for
* * * * * *
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771. * * *
Mistrial is a drastic remedy which should be declared only when unnecessary prejudice results to the accused. State v. Smith, 430 So.2d 31 (La.1983); State v. Alexander, 351 So.2d 505 (La. 1977). The trial court has discretion to determine whether a fair trial is impossible, or whether an admonition is adequate to assure a fair trial when the alleged misconduct does not fit into the provisions for mandatory mistrial, and the ruling will not be disturbed on review absent an abuse of discretion. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); State v. Stephenson, 412 So.2d 553 (La.1982); State v. Sneed, 571 So.2d 735 (La.App. 2d Cir. 1990).
The first motion. The prosecutor was asking Gloria Beals about the events inside Coney Island before the assailants led the victim outside. Ms. Beals testified that Ray and the assailants went to the back room of Coney Island, where a pool table is located, and she followed them to see what they were "fixing to do." She testified they were "talking about marijuana." Defense counsel moved for a mistrial, arguing the response was irrelevant and extremely prejudicial. The trial court denied the motion; counsel noted an objection but did not ask for an admonition.
Gloria Beals is not a court official; thus the mandatory grounds of mistrial do not apply. Powell did not request an admonition. The discretionary grounds did not apply because it is not a crime to talk about marijuana. U.S.C.A. Const. amend. 1. Ms. Beals did not implicate Powell in possessing or distributing marijuana, or in attempting or conspiring to commit these offenses. Given these facts the trial court did not abuse its discretion in denying this motion for mistrial.
The second motion. On cross examination, defense counsel asked Mr. Martinez if he was aware that the co-defendant, Darnell Mack, had been tried and acquitted on these very charges. Mr. Martinez replied:
I understand that, yes, sir, that they did but I still saywell, I am not at liberty to say that but I still say the man was guilty and still is guilty. You can strike that from the record there, Your Honor, but I just had to say it. R.p. 295.
The jury was removed and defense counsel moved for a mistrial or that the jury be instructed to disregard the remark. The trial court told the jury to disregard the statement, as what happened in another proceeding was irrelevant. On appeal Powell urges the statement was highly prejudicial and unsolicited, and outside the witness's personal knowledge. La.C.Ev. art. 602. He also argues, for the first time, that it compromised his right to remain silent. However, a defendant cannot raise a new basis for an objection for the first time on appeal. State v. Cressy, 440 So.2d 141 (La.1983); State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir.), writ denied 505 So.2d 1139 (La.1987). The new grounds will not be considered.
Because Mr. Martinez is not a court official, the mandatory grounds of mistrial do not apply. The trial court correctly observed that the outcome of Mack's trial was irrelevant. In State v. Michel, 422 So.2d 1115 (La.1982), a state witness who spoke to the defendant on the day of the offense testified he was "under the impression that he [the defendant] shot the guy." The Supreme Court held that any prejudice was cured by the admonition to disregard the remark. In the instant case, any prejudice accruing to Powell from the witness's insistence that Mack was guilty, was equally cured by the admonition. The trial court *465 did not abuse its discretion in denying this motion for mistrial.
The third motion. The prosecutor was asking Detective Fisher about the photo lineup he showed the Coney Island witnesses. Detective Fisher knew that photo No. 5 was Powell's picture because:
I removed it from the identification section at Monroe Police Department myself. It has a number on it. The number corresponds with his arrest record. R.p. 420.
Defense counsel objected, citing the mandatory mistrial provisions of art. 770(2) and arguing that the answer implied that Powell has "some type of record." The court stated that Detective Fisher was not a court official; counsel countered that the witness's "repeated" references to inadmissible evidence created prejudice that would warrant a discretionary mistrial. The court replayed the tape of the proceedings and found that Detective Fisher had not previously mentioned any criminal record of Powell's. The court denied the mistrial, but admonished the jury that both question and answer were improper and should not be considered as evidence against the defendant.
A police officer is not a court official for purposes of art. 770. State v. Watson, 449 So.2d 1321 (La.1984), cert. denied 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Jack, 554 So.2d 1292 (La.App. 1st Cir.1989), writ denied 560 So.2d 20 (La.1990). In certain circumstances an admonition might not suffice, as where an experienced police officer engages in a pattern of nonresponsive, prejudicial remarks. See State v. Torres, 580 So.2d 1064 (La.App. 4th Cir.1991). Such is not the case here.
Arguably, the fact that the police have the defendant's photo on file could be understood as evidence of a prior arrest or conviction. However, courts have consistently held that any prejudice from the use of a file photo or "mug shot" is cured by an appropriate admonition. State v. Davis, 407 So.2d 702 (La.1981); State v. Curry, 390 So.2d 506 (La. 1980); State v. Clark, 581 So.2d 747 (La.App. 4th Cir.), writ denied 590 So.2d 63 (La.1991); State v. Grigsby, 445 So.2d 176 (La.App. 3d Cir.1984). Detective Fisher's comment linking Powell's photo to his arrest record was indirect at best and easily remedied by the admonition.
This assignment does not present reversible error.

Compliance with discovery
By his fifth assignment Powell urges the trial court erred in denying his request to impose sanctions and exclude the testimony of state's witness Ray Herd, or in refusing to grant the alternative request for a continuance to meet Mr. Herd's testimony. Powell had sought, by pretrial motion for discovery, to inspect the results of any scientific tests made in connection with the case. The state had answered that these results would be available at a "mutually convenient time."
As its final witness the state called Mr. Herd, the director of the Crime Lab, and tendered him as an expert in blood splatter analysis. Powell objected, arguing the state gave no notice that Mr. Herd would be called, thus his testimony should be excluded under La.C.Cr.P. art. 729.5; Powell also contested the foundation for Mr. Herd's testimony. The prosecutor admitted she never informed the defense that blood splatter analysis would be performed; however, she received Mr. Herd's results only that morning and there was no written report. The court called a brief recess to let both attorneys meet with the witness, and then allowed him to testify. Powell moved for a continuance, so he might secure his own expert to counter Mr. Herd's testimony; this was denied. The court accepted Mr. Herd as an expert criminalist with special training in blood splatter analysis.
Mr. Herd testified that the blood splatters on Powell's pants and shoes suggested that the object being struck was much lower than the person who struck it; the evidence was consistent with an assailant striking a victim who was lying on the ground. On cross examination, Mr. Herd *466 admitted he could not determine the age of the bloodstains or whether they came from this incident. He also admitted that he could not see any blood on the chair piece, but it should have been tested in the lab.
The defense has the right, upon motion, to inspect and copy reports of scientific tests made in connection with the case, that are in the possession of the district attorney and intended for use at trial. La.C.Cr.P. art. 719. The state need not disclose information it does not possess. State v. Williams, 448 So.2d 659 (La.1984); State v. Kidd, 568 So.2d 175 (La.App. 2d Cir.1990), and citations therein. The state has a continuing duty to disclose additional evidence which it discovers or decides to use at trial. La.C.Cr.P. art. 729.3. When a party fails to comply with a discovery order, the court may grant a continuance, order a mistrial on the defendant's motion, or exclude the withheld evidence, among other sanctions. La.C.Cr.P. art. 729.5. Not every discovery violation requires a sanction; in the absence of prejudice, sanctions are not imposed. State v. Quimby, 419 So.2d 951 (La.1982). The effects of a discovery violation may be remedied by effective cross examination. State v. Schrader, 518 So.2d 1024 (La.1988), cert. denied ___ U.S. ___, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990); State v. Messick, 524 So.2d 117 (La.App. 4th Cir.), writ denied 531 So.2d 468 (La.1988).
The state's failure to inform the defendant of the test results was, strictly speaking, a discovery violation. However, Mr. Herd testified that he was not approached to examine the blood splatters until December 10, the first day of trial; the prosecutor stated she did not receive his results until December 12, the day he was called to testify. Until very shortly before Mr. Herd was called, the state did not possess the test results, and obviously could not produce them. The defense would not have gained much time if the state had made immediate disclosure; the advantage of a timely disclosure would have been marginal.
Further, it seems unlikely that the state would have called Mr. Herd except that defense counsel closely cross examined Detective Gregory about the blood splatters earlier. Though it did not grant a continuance, the court held a recess for counsel to become acquainted with Mr. Herd's testimony. Defense counsel skillfully cross examined Mr. Herd, with the result that he could not identify Powell as the assailant or the chair piece as the weapon. Under these circumstances, the discovery violation was harmless error and the trial court did not err in refusing to exclude the testimony or grant a continuance.
Powell finally urges, without any citation of authority, that Mr. Herd was incompetent to express opinions about blood splattering and laid no foundation for these opinions. The Code of Evidence provides that if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise. La.C.Ev. art. 702. The trial court has broad discretion in determining whether to admit expert testimony. Id., comment (d); State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dism. 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984).
Powell does not state what was lacking in Mr. Herd's foundation and we do not perceive any deficiency. We would also note that while blood splatter analysis is not a precise discipline, the Supreme Court has found no error in accepting Mr. Herd as an expert in that field of criminalistics. State v. Williams, 445 So.2d 1171 (La. 1984), at 1182; see also State v. Ancar, 508 So.2d 943 (La.App. 4th Cir. 1987). The trial court did not abuse its discretion in allowing Mr. Herd to express his expert opinion. This assignment lacks merit.

Proof of venue
By his sixth assignment Powell urges the trial court erred in failing to grant his motion for a directed verdict at the close of trial based on the state's failure to prove venue. He argues that not one of the state's 12 witnesses placed the *467 alleged offense within the territorial jurisdiction of Ouachita Parish.
Powell incorrectly argues that the state must prove venue beyond a reasonable doubt. Since an amendment in 1988, La.C.Cr.P. art. 615 has provided:
Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.
In contrast to the claim of improper venue, which must be raised by motion to quash, the claim of no proof of venue may be raised by motion for directed verdict. State v. Jackson, 308 So.2d 265 (La. 1975).
Mr. Martinez testified that his Coney Island was located at 411 DeSiard Street in Monroe; Officer Boyter testified he found the victim behind the Coney Island; Detective Fisher, who investigates crimes in Monroe, also testified that he went from the Monroe Police Department to the Coney Island on DeSiard Street in response to the call. This evidence is sufficient to prove venue in Ouachita Parish by a preponderance of evidence.
Moreover, the trial court may take judicial notice that a recognizable location is inside the Parish, even though the parish is never specifically mentioned by name; Monroe is in Ouachita Parish. State v. Adams, 394 So.2d 1204 (La.1981); State v. Nelson, 543 So.2d 1058 (La.App. 4th Cir.), writ denied 548 So.2d 1229 (La.1989); La. C.Ev. art. 201B. This assignment lacks merit.

Sufficiency of evidence
By his eighth, ninth and tenth assignments, Powell urges the trial court erred in failing to grant his motions for new trial and post verdict judgment of acquittal, and in finding him guilty on insufficient evidence.
Post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. La.C.Cr.P. art. 821B. The trial court shall grant a new trial whenever, among other grounds not relevant to this case, the verdict is contrary to the law and evidence. La.C.Cr.P. art. 851(1). The trial court has wide discretion, in ruling on a motion for new trial, to determine the sufficiency of the evidence. Id., Official Revision Comment (d); State v. Savoie, 448 So.2d 129 (La.App. 1st Cir.), writ denied 449 So.2d 1345 (La.1984). The standard of review is the same for the denial of a motion for post verdict judgment of acquittal as for sufficiency of evidence to sustain a verdict. State v. Sumler, 395 So.2d 766 (La.1981); State v. Smith, 431 So.2d 106 (La.App. 1st Cir. 1983). These assignments collectively challenge the sufficiency of evidence.
In examining a record for sufficiency of evidence, the standard of appellate review is whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Evidence may be direct or circumstantial. On review, the appellate court must resolve any conflict in direct evidence by viewing it in light most favorable to the state; the facts so established from direct evidence and inferred from circumstantial evidence must meet the Jackson standard. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988). When circumstantial evidence is used to prove an element of the offense, that evidence must exclude every reasonable hypothesis of innocence. La.R.S. 15:438; State v. Shapiro, 431 So.2d 372 (La.1982).
Armed robbery is defined as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La.R.S. 14:64. Aggravated *468 battery is the intentional use of force or violence upon the person of another, committed with a dangerous weapon. La. R.S. 14:33, 34. A dangerous weapon is any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La.R.S. 14:2(3). All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La.R.S. 14:24.
The thrust of Powell's argument is that the evidence proves only that he and Odis Ray were at Coney Island on the date of the offense and left about the same time; they went down the sidewalk, turned a corner and went out of the witnesses' view; Odis Ray testified he had never seen Powell before and did not know him; he did not testify that Powell either attacked him with a weapon or took anything of value from him. Without direct evidence linking him to the actual offense, Powell argues the circumstantial evidence simply does not exclude every reasonable hypothesis of innocence.
Powell's recapitulation of the facts, however, omits some crucial evidence. For instance, Gloria Beals testified that Ray started the afternoon by breaking a $100 bill and he still had some cash when he left with the two men. Birdie Lowe testified that Ray had broken two $20 bills that afternoon. Odis Ray, though he did not remember much about the incident, testified that when he left Coney Island he would have had enough money to take a cab home, four or five dollars in bills and change in his front pants pocket. After the incident, officers searched and found an empty wallet and no money except 31¢ on the ground. Although Ray does not recall the incident and nobody else actually saw it, the evidence proves beyond a reasonable doubt that something of value was taken from Ray's person. Moreover, Dr. Sullivan testified that Ray's injuries could not have been inflicted with bare hands. Within a foot of where Ray was lying officers found a broken chair piece with apparently fresh blood on it, though this was not sent to the lab for analysis. Blood was splattered on the rear door of Coney Island. This evidence proves beyond a reasonable doubt that Ray was struck with a dangerous weapon.
The evidence linking Powell to the incident is circumstantial but strong. According to the witnesses, Ray was talking to two men, one of whom was identified as Powell, for some time. Part of this time was spent in the pool room, as seen by Mr. Martinez through a crack in his office wall. Ms. Beals said they had talked about marijuana. Ray and the two men left together, with Ray following them. Ms. Beals wanted to go along to see what was about to happen, but the two men turned her back with abusive language. Mrs. Lowe saw that Ms. Beals was trying to stop Ray from going with them. Ray followed the men to the rear of the building and out of sight, where only minutes later he was found beaten severely. A black man dressed like Powell ran when he saw Officer Boyter's police car near Coney Island. The suspect's bicycle had bloodstains of the same type as the victim. When Powell was located, there was blood on his shoes and jeans; the blood on his jeans matched the victim's.
Mr. Martinez considered the two men's conduct suspicious enough that he watched them closely in the pool room. As a bar owner he observes people drinking and obviously can sense when trouble is afoot. He gathered that the two men were up to no good and Ray would suffer for it. He called the police and found that Ray had indeed been attacked and robbed. Ms. Beals drew the same conclusion, and claimed to have advised Mr. Martinez to call the police. While her testimony is not totally consistent with the rest and she was subject to some impeachment, she was privy to part of the conversation and admitted that when the men left the building, no one had yet "got rough." Given these facts the jury was entitled to infer that Powell led the drunken Ray outside and beat him with a chair piece, with the intention of robbing him.
*469 Powell does not suggest in brief what hypothesis of innocence might be reasonably drawn from this evidence. Powell's companion, Darnell Mack, may have actually wielded the weapon and taken the money. However, Powell helped Mack get Ray behind the building, thus making him a principal in the offense. Though there is no evidence to this effect, Powell might have helped lure Ray out of sight and then backed out of the scheme. However, he fled when Officer Boyter approached, undermining the claim of innocence, and the blood on his clothing is consistent with the finding that he was still on hand when the beating occurred. Powell was not found to be carrying any of the victim's belongings or money, but he had adequate time to dispose of this before he was taken into custody.
The evidence is sufficient to convince a rational trier of fact beyond a reasonable doubt that Powell was a principal to attacking and robbing Odis Ray with a dangerous weapon. Though the evidence is circumstantial, it excludes any reasonable hypothesis of Powell's innocence. These assignments do not present reversible error.

Double jeopardy
By his eleventh assignment Powell urges the trial court erred in failing to grant his pretrial motion to quash the bill of information, based on double jeopardy. The same issue was presented by Powell's motion for post verdict judgment of acquittal. Powell concedes that the offenses for which he was convicted, armed robbery and aggravated battery, include different elements, but argues that the same evidence was necessary to convict him of both in this case. This assignment presents reversible error.
A person cannot twice be put in jeopardy for the same offense. U.S.C.A. Const. amend. 5; La. Const. art. 1 § 15; La.C.Cr.P. art. 591. Double jeopardy bars a second trial only when the offense charged in that trial is (1) identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial, or (2) based on a continuous offense for which the defendant was in jeopardy in the first trial. La.C.Cr.P. art. 596. In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court established the distinct fact test:
The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. 284 U.S. at 304, 52 S.Ct. at 182.
This rule is constitutionally required of the states.[1]Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); State v. Knowles, 392 So.2d 651 (La.1980).
Louisiana also applies a test known in the jurisprudence as the "same evidence" test:
If the evidence required to support a finding of guilt of one crime would also have supported a conviction for the other, the two are the same under a plea of double jeopardy, and the defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for a conviction, not all the evidence introduced at trial.
State v. Coody, 448 So.2d 100 (La.1984); State v. Steele, 387 So.2d 1175 (La.1980); State v. Lockhart, 457 So.2d 176 (La.App. 2d Cir.1984). This formulation appears to be the standard for post trial review of evidence for double jeopardy. See State v. Doughty, 379 So.2d 1088 (La.1980).
Conviction of both felony murder and the underlying felony is barred by double jeopardy. Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 *470 (1977); State ex rel. Wikburg v. Henderson, 292 So.2d 505 (La.1974). In general, conviction of any lesser included offense of felony murder and the underlying felony violates double jeopardy. Neville v. Butler, 867 F.2d 886 (5th Cir.1989); State v. Lee, 554 So.2d 180 (La.App. 2d Cir.1989); State v. Bradford, 514 So.2d 534 (La.App. 3d Cir.1987), writ denied 523 So.2d 226 (La.), cert. denied 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988). The remedy is to vacate the conviction for the less severely punishable offense. State ex rel. Adams v. Butler, 558 So.2d 552 (La.1990); State v. Lee, supra.
As noted earlier, armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation while armed with a dangerous weapon. La.R.S. 14:64. Aggravated battery is the intentional use of force or violence upon the person of another, committed with a dangerous weapon. La.R.S. 14:33, 34. Aggravated battery is responsive to attempted second degree murder. La.C.Cr.P. art. 814A(4). Attempted second degree murder requires proof of a specific intent to kill the victim, while the completed offense of second degree murder may be committed while the offender is engaged in armed robbery, without specific intent to kill. La.R.S. 14:30.1A(2), 14:27.
Prior to trial, double jeopardy did not bar the prosecution of both attempted second degree murder and armed robbery. The state was entitled to pursue the attempt charge with evidence of specific intent to kill, and the armed robbery charge with evidence of taking. Sekou v. Blackburn, 796 F.2d 108 (5th Cir.1986). The trial court did not err in taking the issue under advisement pending the close of the state's case.
The verdicts actually rendered, however, must also be analyzed for the evidence required to support each conviction. State v. Doughty, supra. In the first place, the verdict of aggravated battery negates specific intent to kill. Moreover, in this case the state could not prove an armed robbery by the element of intimidation, as there is absolutely no evidence of intimidation here. The physical evidence is that Ray was struck in the face with a hard object, and there were no witnesses to refute this. Viewed in light most favorable to the state, the conduct necessary to convict in this case is that Powell took something of value from Ray's person by use of force (not by intimidation) while armed with a dangerous weapon. No additional conduct beyond this was necessary to prove an aggravated battery; there is only one offense in this case because the evidence required to support the conviction of armed robbery also supports the conviction of aggravated battery. See State v. Doughty, supra; State v. Vaughn, 431 So.2d 763 (La.1983); State v. Lockhart, supra; State v. Lee, supra. To affirm both convictions would violate double jeopardy even though the two sentences are to be served concurrently. State v. Doughty, supra.
Aggravated battery carries a maximum sentence of 10 years with or without hard labor, and a fine of $5,000. La.R.S. 14:34. Armed robbery, which has the additional element of taking, carries a maximum sentence of 99 years at hard labor without benefit of parole, probation or suspension of sentence. La.R.S. 14:64B. Armed robbery is the more severely punishable offense. The conviction and sentence for armed robbery will therefore be affirmed.
The conviction and sentence for aggravated battery, however, are vacated.

Excessive sentence
By his first and second assignments Powell urges the trial court failed to comply with the sentencing guidelines of La.C.Cr.P. art. 894.1 and imposed an excessive sentence. Powell cites his status as a first felony offender with a juvenile record "of no consequence" and several petty misdemeanor convictions as an adult.
The test of excessiveness is two-tiered, the first being a review of the trial court's compliance with the guidelines of art. 894.1. The court need not repeat every factor as long as the guidelines were *471 amply considered. State v. Smith, 433 So.2d 688 (La.1983). The purpose of art. 894.1 is to assure a factual basis for the sentence, not to exact a rote recital of factors. State v. Lanclos, 419 So.2d 475 (La.1982). The court should address the defendant's personal history, prior criminal record, the seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied 521 So.2d 1143 (La.1988).
The second tier is constitutional excessiveness. A sentence violates La. Const. art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when crime and punishment are viewed in light of the harm done to society, the sentence shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). A trial court has great discretion to impose sentence within statutory bounds; absent a manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, supra.
In selecting a proper sentence the trial court may consider not only the defendant's prior convictions but all prior criminal activity. State v. Washington, 414 So.2d 313 (La.1982); State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.), writ denied 452 So.2d 695 (La.1984).
Here the court did not track the guidelines verbatim; however, it offered a comprehensive and thoughtful summary of the important criteria. Briefly stated, the court noted Powell's disadvantaged childhood, his educational problems, his sporadic alcohol and drug use, his spotty work record and past due support for his illegitimate child. The court considered it mitigating that the dangerous weapon used was not a knife or gun, and that Powell was engaged to be married. The court devoted a great deal of time to Powell's criminal record, which included a juvenile record; adult convictions for aggravated and simple battery, disturbing the peace and trespassing; and arrests for carnal knowledge of a juvenile, criminal damage to property, simple battery and trespassing. Though all these convictions and arrests were for "petty" offenses, all involved scraps and fights, and some involved violence on the person. The instant offense resulted in painful injury to Odis Ray, large unpaid hospital bills, and a permanent impairment of his ability to work as a climber for a tree service. The court provided an adequate factual basis for sentence.
Armed robbery carries a sentencing range of five to 99 years at hard labor, without benefit. Powell and an accomplice avoided immediate detection by leading their victim to a dark alley and waving off a potential witness. Then they viciously beat and robbed their intoxicated victim. Powell has a history of violent behavior. The lower-end sentence of 15 years at hard labor, without benefit, simply does not shock our sense of justice for this offense and offender.
These assignments lack merit.

Error patent review
Powell has finally requested a review for errors patent and any legal corrections thereof that justice demands.
The trial court's judgment states that Powell pled guilty to armed robbery and attempted second degree murder. R.p. 118. However, the minutes correctly state, and the transcript verifies, that Powell never withdrew his not guilty plea, but proceeded to trial and was found guilty of armed robbery and aggravated battery. The minutes and record prevail. State v. Elfert, 247 La. 1047, 175 So.2d 826 (1965). The error is harmless. As a result of the instant opinion, the trial court is to amend the judgment appropriately.
In imposing sentence the court did not inform Powell of the prescriptive period for post conviction relief. La.C.Cr.P. art. 930.8C. This defect has no bearing on the conviction or sentence and is not ground for reversal or remand for resentencing.
*472 The trial court is instructed to send appropriate written notice to Powell within 10 days of the rendition of this opinion and make a note in the transcript that he received the notice.
We find nothing else we consider to be error patent.

Conclusion
For the reasons expressed, Powell's conviction and sentence for aggravated battery are vacated. The conviction and sentence for armed robbery are affirmed.
CONVICTION AND SENTENCE FOR AGGRAVATED BATTERY VACATED.
CONVICTION AND SENTENCE FOR ARMED ROBBERY AFFIRMED.
BROWN, J., concurring.
NOTES
[1] The Supreme Court has recently expanded its jeopardy analysis to include not only the Blockburger test but the "same conduct" test. See Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). Because Louisiana already applies the broader test, the rule of Corbin does not affect our analysis.