WARD, Judge.
Gene Ray Hess appeals his conviction of first degree murder. Gene Ray Hess and James Terryl Buras were indicted by a grand jury for the murder of John Kevin Ryan. Because the murder was alleged to have been committed during an armed robbery, the charge was first degree murder. L.S.A.-R.S. 14:30(A)(1). As part of a plea bargain, Buras pled guilty to second degree murder and agreed to testify as a State witness. After a six day jury trial, Hess was found guilty as charged and the trial court sentenced him to life imprisonment without benefit of parole, probation or suspension of sentence.
In his first assignment of error, Hess alleges that there is insufficient evidence to support the jury verdict, hence he contends that his conviction was obtained without due process of law. When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
*277 The most damaging evidence came from co-defendant James Terryl Buras. His testimony is the core of the State’s case. Buras testified that he lived with Hess and Hess’s girlfriend, Louwanna Lirette, in a trailer in Venice, Louisiana. On the afternoon of December 2, 1990, he and Hess were in the trailer when Wanda Drawdy and the victim, John Kevin Ryan, arrived in Ryan’s vehicle— a Ford Bronco. Shortly thereafter, Richard Vasquez showed up at the trailer, looking for his girlfriend, Wanda Drawdy. When Vasquez found Drawdy in the trailer with the three men he began beating her, but Buras, Hess and Ryan stopped him. They then talked Vasquez into leaving the trailer and Hess called the police while Vasquez waited outside. After the police arrived, and after the matter was settled, Vasquez left in his car, Drawdy left to go to her sister’s house, and Hess, Buras, and Ryan returned to the trailer. Upon returning to the trailer, Ryan gave Buras $5.00 to purchase beer. Buras then took Ryan’s Bronco and went to Adam’s Grocery to buy the beer. After Buras returned, Hess and Ryan stayed at the trailer drinking beer. Buras stated that he and Hess also shot up cocaine; Buras had six hits that evening, but he did not recall the number of hits Hess had. At some point, Hess pulled out a gun. Buras surmised that Hess had taken the weapon out of Ryan’s Bronco.
Ryan was sleeping on the sofa in the living room when Hess showed Buras the gun. Buras testified that Hess stated “let’s kill him.” Hess told Buras that he would keep the gun and Buras could have the truck. According to Buras, Hess kept urging him on, saying “It is easy to do — all you do is put the gun to his head like that and pull the trigger ... do it, man.” Buras stated that because of Hess’s encouragement, his “blood got up” and he just pulled the trigger. Hess went through Ryan’s pants’ pockets and took a $1.00 bill and Ryan’s checkbook. Buras and Hess then put the body in the Bronco and went riding.
Buras dropped Hess off at the Big Fish lounge and, with Ryan’s body in the back of the Bronco, he went to buy gasoline at the Charter Food Mart. When he got there he found that he did not have the gas cap key, and he went back to the Big Fish lounge to get Hess so they could look for the key together. They found the key on the dashboard of Ryan’s Bronco, and then returned to the Charter Food Mart and put $2.00 of gasoline in the truck. Buras and Hess then drove to the sewerage pumping station in Plaquemines where they dumped the body. They returned to the trailer. Buras left Hess at the trailer and went to a bar called “Black Gold.” While at the Black Gold, he saw a couple of friends and spoke with them about selling the gun. Buras eventually sold the gun to Herman Waltman for fourteen dollars.
Buras stopped at Charter Food Mart again, purchased more gasoline for the Bronco and left town, driving to Texas until the truck ran out of gas outside of Beaumont. Buras was able to hitchhike to San Antonio, but there he was arrested and confessed that he shot Ryan.
The corroborating evidence does not go to the actual murder, but only to the circumstances before and after it, focusing on the disposition of the stolen pistol and possession of the Bronco. To summarize that evidence, Donald Boutwell, a deputy with the Plaque-mines Parish Sheriffs Office, testified that on the night of the murder he investigated a fight between Richard Vasquez and Vasquez’s girlfriend at Hess’s trailer. Buras, Hess, and Ryan were present at the trailer when Boutwell arrived at 8:00 p.m. and the matter was resolved by approximately 8:30 p.m.
Yvette Young, a barmaid at the Pub Bar and Grill, recalled Hess coming into the bar between 9:00 p.m. and 10:00 p.m. that night and buying a bag of chips and a Coke. Hess asked her if she knew of anyone who wanted to buy a gun. Buras came in the bar later that evening, between 12:00 a.m. and 1:00 a.m., and purchased a six pack of beer from her.
Ronald Smith, a customer of the Pub Bar and Grill on the evening of December 2, testified that he saw Buras and Hess outside the bar as he was leaving. Buras and Hess were in a brown Ford Bronco. Smith said that Buras stated that he and Hess were in a rush as they had just shot someone.
*278 Deputy Bruce Buras testified that he saw Buras at the Charter Food Mart at approximately 12:45 a.m. and that Buras was driving a tan and brown Ford Bronco.
Detective Charles Guey of the Plaque-mines Parish Sheriffs Office testified that after Buras’s arrest in Texas, Guey flew to San Antonio, and took Buras into custody. Buras confessed. The Bronco had blood on the tailgate.
Louise Braun, a senior firearms examiner with the Jefferson Parish Sheriffs Office Crime Lab, examined the bullets taken from Ryan’s body and concluded that the bullets came from a .22 caliber weapon, but she could not conclusively say that the .22 caliber pistol introduced at trial was the pistol that fired the shots.
Marvin Smith testified that he was at the Black Gold Bar and that Buras went into the parking lot and shot a small caliber gun four times. Smith said that Buras was trying to sell the gun. This incident occurred around 4:30 a.m. the morning of December 3, 1990.
Wanda Drawdy testified about the fight between herself and Richard Vasquez at Hess’s trailer earlier in the evening and identified the gun produced at trial as belonging to Ryan. She stated that Ryan had the gun with him when she and Ryan went to Hess’s trailer. Richard Vasquez corroborated Drawdy’s testimony about the fight, but he did not see a gun while he was at Hess’s trailer. However, he saw the gun early the next morning when his friend, Herman Watt-man, showed it to him. They went to the Charter Food Store to hock the gun.
Ms. Blanchard, the owner of the bar, testified that she served Hess when he came into the Pub Bar and Grill and that he did not say anything about selling a gun.
Hess’s girlfriend, Louwanna Lirette, testified on behalf of the State during rebuttal. Lirette stated that she was not at the trailer on the evening of December 2, 1990. She returned to the trailer at 5:00 a.m. on Monday, December 3,1990. When she arrived at the trailer, the defendant’s alarm was going off and he was asleep. She woke him up, they talked for an hour and then both went to sleep. Ms. Lirette stated that Hess never left the trailer that morning. She further acknowledged that she, Hess and Buras all used cocaine.
Dr. Susan Garcia, a pathologist with the Jefferson Parish Coroner’s Office, performed the autopsy, and determined that the cause of death was a gunshot wound to the head which caused a perforation of the brain. Dr. Garcia retrieved two bullets from the decedent’s head.
Hess alleges that the testimony upon which the State relied, referring to the testimony of Yvette Young, James Buras, and Ronald Smith, was filled with so many inconsistencies and conflicts that the jury should not have accepted their testimony. The determination of the weight and credibility to be given to a witness’s testimony is an issue for the jury as the trier of fact. It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986), State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989). Rather, the appellate court reviews the evidence to determine whether it meets minimal constitutional sufficiency standards. Jackson v. Virginia, supra.
The inconsistencies Hess refers to are inconsequential in light of Buras’s unwavering testimony. They are merely inconsistencies that can be expected in any testimony, and they relate to the times Buras and Hess were at the different lounges in the area after the murder. The discrepancies noted by Hess do not contradict Buras’ testimony about the murder of John Kevin Ryan.
Hess, who did not pull the trigger but encouraged Buras to do so, is a principal and equally guilty in the eyes of the law. A “principal” is any person who is concerned in the commission of a crime, whether he is present or absent, or whether he directly commits the act constituting the offense, who aid and abet in its commission, or who directly or indirectly counsels or procures another to commit the crime. LSA-R.S. 14:24. See State v. Brooks, 505 So.2d 714 (La.1987), cert. den., Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363. To support a defendant’s conviction as a principal to the *279 crime of first degree murder, the State must show that the defendant possessed the requisite mental state for the crime. Brooks, supra. In the ease of first degree murder, when the State contends the defendant is a principal to the crime, the State must prove that the defendant had the specific intent to aid, abet, counsel, or procure another to commit the murder. Although specific intent is seldom capable of proof by direct evidence, in this case, Buras’s testimony provided rare direct evidence of Hess’s specific intent to aid or counsel another to commit murder.
Viewing the testimony of Buras in the light most favorable to the prosecution, the State produced sufficient evidence for a reasonable trier of fact to conclude, beyond a reasonable doubt, that Hess had committed a robbery, and that he had the specific intent to aid and counsel Buras to kill Ryan.
In his second assignment of error, Hess contends that the State failed to prove the identity of the victim as John Kevin Ryan. This is without merit. Buras, who knew Ryan, identified the person that he and Hess killed as John Kevin Ryan.
In his third assignment of error, Hess argues that the State failed to prove that the murder occurred in Plaquemines Parish thereby failing to establish proper venue in the 25th Judicial District Court. The issue of improper venue must be raised prior to trial through a motion to quash. Code of Criminal Procedure article 615 provides, in pertinent part, that “[v]enue shall not be considered an essential element to be proven by the state at trial, rather, it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.” See also State v. Powell, 598 So.2d 454 (La. App. 2nd Cir.1992), writ den., 605 So.2d 1089 (La.1992). Even if this were not the rule, venue was proven. While Plaquemines Parish was not specifically mentioned by name, Buras testified that he shot Ryan while in Hess’s trailer, and Detective Guey and several other police officers testified that Hess’s trailer was in Venice, and the trial court could take judicial notice that Venice is located in Plaquemines Parish.
In his last assignment of error, Hess argues that the trial court erred in not transferring this matter to another parish as requested in his pro se motion for change of venue. The record reflects that the trial judge never ruled upon Hess’s pro se motion for a change of venue, filed May 1, 1991. However, Hess filed numerous pro se motions, including motions to recuse the trial judge. After a judge ad-hoc was appointed to hear the case, the trial court appointed one of the most distinguished defense counsel in Louisiana to represent Hess. After numerous pretrial motions and hearings, the case proceeded to trial in Plaquemines Parish without objection by either Hess or his appointed counsel.
The Louisiana Code of Criminal Procedure article 841 states that “an irregularity or error cannot be availed of after a verdict is rendered unless it was objected to at the time of occurrence.” Because neither Hess nor his counsel objected to the failure of the trial court to rule on Hess’s pro se motion for a change in venue, they cannot now claim the benefit of that irregularity. If it were otherwise, a defendant could chance a favorable verdict, and if unsuccessful, then raise the question of the irregularity. Moreover, this ease is similar to State v. Brogdon, 426 So.2d 158 (La.1983), cert. den., Brogdon v. La. 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (La.1985), wherein the defendant, at his suppression hearing, reminded the trial judge of his motion for change of venue. The trial court denied the motion at that time but reserved defendant’s right to reurge the motion at the time of jury selection. The defendant failed to reurge the motion for a change of venue at the jury voir dire. On appeal, the defendant argued that the trial court erred in denying the motion without first conducting a contradictory hearing on its merits. The Supreme Court stated that as the defendant failed to reurge the motion at the time of jury voir dire, he was precluded from arguing on appeal that the trial court erred in denying the motion without a hearing. We do not find any material difference in the facts of Brogdon and this case and we reach the same result. This assignment of error has no merit.
*280 We affirm the conviction and sentence of Gene Ray Hess.
AFFIRMED.